Fred D. Coles, Plaintiff-Appellant, v. Sidney T. Holzman, et al., Constituting the Board of Election Commissioners of the City of Chicago, and Ex Officio Constituting the Electoral Board for the Purpose of Hearing and Passing Upon Nominating Petitions for the Office of Ward Committeeman, and Edward J. Barrett, County Clerk of the County of Cook, and Albert S. Porter, Defendants-Appellees.

Gen. No. 49,528.

First District, Third Division.

December 3, 1964.

[REDACTED]

Newton Dale Hacker, of Chicago, for appellant.

Stanley T. Kusper, Jr., and William R. Ming, Jr., of Chicago, for Board of Election Commissioners, appellees.

MR. JUSTICE DEMPSEY delivered the opinion of the court.

The plaintiff, Fred Coles, a candidate for Democratic Committeeman of the 21st Ward of Chicago, filed his nominating petition with the County Clerk on January 22, 1964. Objections to his petition were filed on February 7, 1964, and on February 12, pursuant to law and after proper notice, a hearing on the petition and

the objections was held before the Electoral Board of the City of Chicago.

A nominating petition for ward committeeman of the Democratic party in the 21st Ward at the primary election of April 14, 1964, required the signatures of 1,475 qualified electors of that party. Coles' petition contained the names of 1,925 nominators; however, the objector claimed that 930 of the nominators were not qualified primary electors of the Democratic party, that 758 of the purported signatures were not those of the persons whose names appeared as signers, that 261 nominators were not registered voters of the 21st Ward, that the addresses of 140 nominators were improper, that 70 nominators signed prior petitions of other candidates for the same office and that the notary who acknowledged Coles' statement of candidacy and loyalty oath was not registered with the County Clerk.

At the hearing both Coles and the objector were represented by counsel. A motion to strike the objections because of lack of specificity was taken under advisement by the board. The objector offered in evidence two exhibits. One was a group exhibit of 28 affidavits from persons who swore that they had not signed Coles' petition although their names appeared thereon as signers. The other was an exhibit which detailed by sheet number and by line number those objections which theretofore had not been particularized. The electoral board admitted into evidence the group exhibit and took the second exhibit, and the objection which had been made to it by the plaintiff, under advisement. The board received in evidence an exhibit introduced by the plaintiff which consisted of (a) a deposition by the notary whose qualification had been questioned and (b) a certificate from the office of the Secretary of State of Illinois stating that

she was a notary public. The objector requested that the board check the signatures on the petition, in the light of the objections thereto, against its own records. The board said that it would and then reserved its decision.

The decision, announced two days later, was in favor of the objector and against the plaintiff, but the board neither stated the reason for its decision nor made any findings of fact. After a preliminary statement concerning the board's jurisdiction and the steps taken in regard to the hearing, the decision merely concluded:

"IT IS, THEREFORE, ORDERED, ADJUDGED, AND DECREED that the objections of ALBERT S. PORTER to the Nominating Petition of FRED D. COLES, candidate for the office of WARD COMMITTEEMAN of the DEMOCRATIC Party for the 21st Ward of the City of Chicago are hereby sustained and that said Petition is hereby declared insufficient in law and that the name of FRED D. COLES as candidate for the office of WARD COMMITTEEMAN of the DEMOCRATIC Party for the 21st Ward of the City of Chicago shall not be printed on the ballot at the primary election to be held on April 14, 1964."

A complaint for certiorari was filed by the plaintiff and the writ was issued by the Circuit Court. In its return to the writ the board submitted the nominating petition, the objections, objector's exhibits 1 and 2, the plaintiff's exhibit, the report of the proceedings at the hearing and the records of the electoral board consisting of the permanent registration cards of the voters of the 21st Ward. These cards contained pertinent information concerning each registered voter, including his signature and voting record. The

trial court, after a prompt and full hearing, quashed the writ of certiorari.

The plaintiff's contentions in this appeal are that the board exceeded its jurisdiction, that its decision was arbitrary and capricious, that it misapplied the statutory requirement that a petition for ward committeeman be signed by "qualified primary electors" of the same political party as that of the candidate, that it misinterpreted the meaning of those words and that it made no findings of fact. Stressed is the point that the board did not make written findings of fact and was not able to do so because there was no evidence upon which such findings could be based.

■ The record does not show that the plaintiff's nominating petition was checked against the register of voters, or what the result of such a check was, if one were made. The plaintiff's attorney stated in his oral argument in this court that after the hearing he appeared at different times at the offices of the board, that he repeatedly inquired when the check was to take place, demanded that there be one and that none was ever made. However, his appearances, inquiries and demands are not in the record which was submitted by the board in response to the writ, and we cannot consider matters de hors the record. Likewise, we can give no weight to a statement volunteered by the board in its motion to quash the writ of certiorari: that it arrived at its decision after considering the register of voters in the 21st Ward as well as the nominating petition, the objections thereto, the hearing thereon and the exhibits.

■ We can, however, take cognizance of the general circumstances under which the hearings were held and the decisions made. We can surmise from these circumstances that a check was not made personally by the members of the board, or if made was

97

not thorough. The very nature of the proceedings leads to this conclusion, for the board was faced with a task impossible for accomplishment within the time allotted to it by law. Fifty-five sets of objections to almost as many nominating petitions for ward committeeman were filed with the board. In the space of seven days, from February 7, 1964, the statutory date for filing objections, to February 14th, the statutory date for certifying its decisions, the board had to receive the objections, arrange its calendar, notify all candidates and objectors, conduct the hearings, review the evidence, deliberate and decide. The preliminary procedures took place from February 7th to February 11th. The hearings were commenced on February 11th and were held on the 11th, 12th and 13th. Multiple objections to some 50 petitions, involving thousands upon thousands of disputed signatures, were taken under advisement. A decision in each case was made before 5:00 p. m. on February 14th. Because of the limited time available to the board, it is not unreasonable to conclude that it could not have given the careful attention to each objection and to each signature that the needs of each case required. In consequence thereof mistakes and unjust rulings could have occurred.

However, under our present law judicial review of the board's rulings and decisions is severely restricted. Section 7–10 of the Election Code (Ill Rev Stats 1963, c 46, § 7–10) states that the name of no candidate for ward committeeman shall be printed upon the primary ballot unless a petition for nomination has been filed in his behalf, and it prescribed the form, content and requirements of such a petition, including the requirement that such petitions must be signed by qualified primary electors of the candidate's political party. Section 7–13 provides that objections to petitions for candidates for ward commit-

teemen must be filed not less than 67 days prior to the primary and must be heard and ruled upon not less than 60 days prior to the date of the primary by the electoral board which, in the City of Chicago, is comprised of the members of the Board of Election Commissioners. Section 7–13 further states that in determining the validity of the objections the electoral board shall have the same powers as other electoral boards under the provisions of section 10–10 of the Election Code. Section 10–10 provides, in part:

> "The electoral board . . . shall decide whether or not the certificate of nomination, or nomination papers on file are valid or whether the objections thereto should be sustained and the decision of a majority of the electoral board shall be final."

The finality of the electoral board's decisions and the limited jurisdiction of the courts to review those decisions was discussed in People ex rel. Schlaman v. Electoral Board of Cook County, 4 Ill2d 504, at 509, 122 NE2d 532, at 535 (1955). In the Schlaman case the Circuit Court of Cook County, in a mandamus and declaratory judgment action, overruled a decision of the electoral board and ordered it not to print the name of a candidate for township committeeman on the official ballot. The Supreme Court, in reversing the trial court, said:

> "A clearly fraudulent decision by the electoral board based upon an abuse of discretion could conceivably result in a seizure of the control of political machinery and an effective disenfranchisement of voters or candidates. In such instance it may be that relief could be had in the courts. This is not such a case, however, and considering the plaintiff's allegations we are of the opinion, in view of section 10–10 of the Elec-

tion Code, that the decision of the electoral board is final. Therefore, the circuit court of Cook County did not have jurisdiction to grant the requested relief, and it committed error in purporting to do so."

 We recognize, of course, that decisions may be unjust without being fraudulent and that decisions made in haste under the pressure of a congested calendar may be arbitrary. We recognize too that the law contemplates decisions based on the personal evaluation of the evidence by the board itself rather than on reports submitted to it by clerks who are assigned the task of checking questioned signatures against permanent registration cards. However, confronted as we are with the legislative interdiction that the decisions of the board are final, such decisions, unless "clearly fraudulent," cannot be reviewed. Relief from unjust and unfair decisions is presently confined to exceptional and extraordinary cases. The case at hand is not such a case for there is nothing in the record which shows that the decision of the board was clearly fraudulent.

██ The recent case of Telcser v. Holzman, 31 Ill 2d 332, 201 NE2d 370, is dispositive of the two remaining points raised by the plaintiff in this appeal: (1) that the board erred in its application and interpretation of the statutory words "qualified primary electors" and (2) that the board, an administrative agency, made no written findings of fact. In reference to point (1) the court (citing the Schlaman case) said the interpretation made by the board, in the absence of an interpretation so unreasonable as to amount to fraud, is final. In reference to point (2) the court said that the principal reason for requiring written findings of fact by an administrative agency is that they are necessary for an orderly and efficient

judicial review, but that where the administrative decision is not subject to judicial review there is no substantial reason for requiring written findings of fact.

In view of section 10–10 of the Election Code, and the Schlaman and Telcser cases, we must affirm the order of the trial court quashing the writ of certiorari.

The order of the Circuit Court is affirmed.

Affirmed.

SCHWARTZ, P. J. and SULLIVAN, J., concur.