ALAN M. WISEMAN, Plaintiff-Appellant, *v.* PAUL ELWARD *et al.*,
Defendants-Appellees.

(No. 57012;

First District—April 25, 1972.

Marshall Patner, of Chicago, for appellant.

Michael E. Lavelle and Andrew M. Raucci, both of Chicago, for appellees.

Mr. PRESIDING JUSTICE STAMOS delivered the opinion of the court:

This is an appeal from an order of the Circuit Court affirming the decision of the Cook County Electoral Board, which overruled objections to the nominating petition of Raymond K. Berg, candidate for nomination of the Democratic Party for the office of State's Attorney.

The petition for nomination of Raymond K. Berg was filed on December 20, 1971, bearing signatures well in excess of the minimum required by statute. On December 27, 1971, plaintiff filed a timely objection to that petition, alleging the following as grounds for voiding the petition: (1) that the composition of the Electoral Board, the administrative body charged by statute with the duty of hearing objections to nominating petitions, violated the provisions of the Election Code and lacked balanced political representation; 2) that numerous petition sheets contained forgeries and bore false affidavits by circulators; 3) that certain sheets were improperly notarized; and 4) that certain sheets were either circulated or signed as a direct result of political patronage pressures, contrary to the prohibitions of a recent federal court decision. Most of the objections incorporated attached exhibits, which specified petition pages on which particular violations were allegedly present. The objector sought to reserve the right to subsequently add to these specified page numbers by including the phrase, "and as may be supplemented hereafter," after each exhibit's designation. Following the enumerated objections, there was a request for the issuance of subpoenas pursuant to Section 10—10 of the Election Code.[1]

The Electoral Board issued its call, setting December 31, 1971 as the hearing date for the objections. On December 28, 1971 plaintiff filed an action in Federal Court, seeking the production of certain records by the Cook County Clerk and the Chicago Board of Election Commissioners. A consent order was entered in that proceeding on December 30, 1971, wherein it was agreed that those two offices would produce voter registration cards and the petition of Raymond K. Berg for inspection. The County Clerk and Board of Election Commissioners were to assemble the documents and deliver them to plaintiff no later than January 2, 1972. Plaintiff was to be allowed to inspect and copy the documents through January 4, 1972. This work began promptly and was in progress on December 31st, when the hearing before the Electoral Board com-

---

[1] Ill. Rev. Stat. 1971, ch. 46, par. 10—10:
"* * * The electoral board shall have the power to administer oaths and to subpoena and examine witnesses and at the request of either party the chairman may issue subpoenas requiring the attendance of witnesses and subpoenas *duces tecum* requiring the production of such books, papers, records and documents as may be evidence of any matter under inquiry before the electoral board, in the same manner as witnesses are subpoenaed in the Circuit Court * * *."

menced. Plaintiff appeared and immediately requested a continuance, citing as grounds the consent order of the Federal Court and the difficulty of the copying task which had been undertaken. After establishing for the record that the objector was not prepared to proceed at that time on any of his objections, the Electoral Board continued the hearing until January 5, 1972. On January 3, 1972, plaintiff appeared before the Chairman of the Electoral Board for the limited purpose of formally requesting the issuance of subpoenas *duces tecum* for the production of employment records and patronage information concerning the circulators of the Berg petition. The request was denied. On the morning of January 4, 1972, plaintiff again appeared before the Chairman, who was joined by a second member of the Electoral Board, for the limited purpose of obtaining a continuance for the hearing scheduled for January 5th. As support for his motion, plaintiff informed the Electoral Board that the Board of Election Commissioners had been unable to meet the deadline set by the federal consent order. One-third of the requested voter registration cards had been reported missing, and the production of the other cards was proceeding at a pace slower than expected. After hearing further argument and responses, the Electoral Board took the motion under advisement, deferring its decision until the following day. Before adjournment all parties were cautioned to assume the continuance would be denied and to be prepared to proceed on the objections the next day. Plaintiff returned before the Chairman in the afternoon of January 4th to request the issuance of subpoenas to compel the appearance of five Berg petition circulators and subpoenas *duces tecum* to compel the production of all registration cards which had been reported missing by the Board of Election Commissioners. Both requests were denied.

The full Electoral Board reconvened on January 5, 1972. Plaintiff renewed his motion for a continuance, asking for additional time to assimilate the data which had been produced and to facilitate the production of the 30%–40% of the voter registration cards which the Board of Election Commissioners had been unable to locate. Before ruling on the motion, the Chairman enumerated what he deemed to be 14 specific objections submitted by plaintiff and asked if plaintiff was prepared to proceed on any of them. He received a negative response to each of his 14 inquiries. Thereupon, the motion for a continuance was denied, and, without further comment by counsel, plaintiff's entire objection was denied on the grounds that no evidence had been presented. A written decision followed on January 7, 1972, confirming the Electoral Board's oral decision that the objections were overruled for failure to adduce evidence to sustain them.

After the Electoral Board denied a rehearing, plaintiff filed a petition for judicial review in the Circuit Court pursuant to Section 10—10.1 of the Election Code.[2] The Circuit Court, after conducting extensive hearings, issued two opinions. The first, rendered on January 28, 1972, denied plaintiff's request for a *de novo* hearing and held that the Circuit Court was limited in its review to the record of the proceedings before the Electoral Board. The second opinion, rendered on February 3, 1972, held that the Electoral Board had acted properly in denying plaintiff's motion for a continuance and in overruling plaintiff's objections to the petition. After the Illinois Supreme Court denied jurisdiction under its Rule 302, plaintiff appealed to this court. We granted his motion for expedited review. On March 17, 1972, we entered an order affirming the decision of the Circuit Court and indicated that this opinion would follow:

On appeal, plaintiff makes two primary contentions: first, that the Circuit Court erred in limiting the scope of its review to the record of the Electoral Board proceedings and, second, that the denial of plaintiff's requests for subpoenas and motion for a continuance constituted an abuse of discretion by the Electoral Board, which thereby prevented plaintiff from exercising his statutory right to challenge the nominating petition of the candidate. We shall address ourselves initially to plaintiff's contention that a *de novo* hearing was obligatory in the Circuit Court.

*OPINION*

■■ Prior to 1967 the Illinois Election Code provided that, "the decision of a majority of the electoral board shall be final."[3] This was interpreted by the courts to preclude judicial review of Electoral Board decisions, except upon the limited issue of whether a decision was clearly fraudulent. (*Coles v. Holzman*, 55 Ill.App.2d 93, 204 N.E.2d 162; *Hatch v. Holzman*, 55 Ill.App.2d 168, 204 N.E.2d 157.) In 1967 the Election Code was amended as follows:[4]

"A candidate or objector aggrieved by the decision of an electoral board may secure judicial review of such decision in the circuit court of the county in which the hearing of the electoral board was held * * *."

The statute, as amended, did not define the scope of review, and the Administrative Review Act was not made applicable. Plaintiff contends that this was a calculated omission reflecting a legislative intent to grant

---

[2] Ill. Rev. Stat. 1971, ch. 46, par. 10—10.1.
[3] Ill. Rev. Stat. 1965, ch. 46, par. 10—10.
[4] Ill. Rev. Stat. 1971, ch. 46, par. 10—10.1.

an unlimited scope of review in the Circuit Court. As support for this position, plaintiff cites the following *dicta* from *Bankers Life & Casualty Co. v. McCarthy*, 11 Ill.App.2d 334, 341, 137 N.E.2d 398:

"Where the statute which grants an appeal from an inferior court or administrative agency does not limit the scope or power of the reviewing court upon such appeal, the reviewing court hears it *de novo* as an original hearing."

We have discovered further support for plaintiff's theory. In *City of Rockford v. Compton*, 115 Ill.App. 406, it was expressly held that a *de novo* hearing was contemplated by a statute which allowed an "appeal" to the Circuit Court from an administrative agency decision, where the statute did not expressly limit the Circuit Court's scope of review. However, it is clear from the opinion in *City of Rockford* that the court's decision was primarily based on the following interpretation of the word "appeal:" (115 Ill.App. at 411).

"The term appeal, in its original, technical and appropriate sense, meant the removal of a suit from an inferior court, after final judgment therein, to a superior court, and placing the case in the latter court to be again tried *de novo* upon its merits, just as though it had never been tried in the inferior court."

The court held that, absent other statutory language suggesting a contrary intent by the legislature, the Circuit Court was bound by the traditional connotations of the word, "appeal," and should have granted a *de novo* hearing. Both *City of Rockford* and *Bankers Life* are thus distinguishable from the case at bar, wherein the pertinent statute provides for "judicial review" instead of "appeal." The two phrases are not synonymous, "judicial review" connoting a more limited scope of review than a hearing *de novo*. (*South v. Railroad Retirement Board* (N.D. Ga. 1942), 43 F.Supp. 911 aff'd, 131 F.2d 748; *Warren v. Indiana Telephone Co.*, 217 Ind. 93, 26 N.E.2d 399.) We believe that the legislature, by choosing the phrase, "judicial review," manifested an intent that review of Electoral Board decisions not exceed the record made before that Board. Two other considerations support this conclusion. First, it is illogical to presume that, by its 1967 amendment, the legislature intended to institute a full *de novo* hearing, when, previously, no review at all had been provided. The more reasonable conclusion is that it intended simply to provide a remedy against arbitrary or unsupported, albeit non-fraudulent, Electoral Board decisions. This could be accomplished by providing a review procedure limited in scope to the record of the proceedings before the Electoral Board. Second, in construing the language of a statute, we must presume that the legislature did not

intend to draw an unconstitutional statute. (*City of Springfield v. North Fork Outlet Drainage Dist.*, 249 Ill.App. 133.) If Section 10—10.1 of the Election Code was construed to require a trial *de novo* in the Circuit Court, it would probably constitute an unconstitutional infringement upon our separation of powers. (See *West End Savings & Loan Assoc. v. Smith*, 16 Ill.2d 523, 158 N.E.2d 608; *Illinois Hospital Service Inc. v. Gerber*, 18 Ill.2d 531, 165 N.E.2d 279.) Therefore, we hold that the Circuit Court did not err in confining its review to the record of proceedings before the Electoral Board.

Plaintiff's second contention is that the Electoral Board's denial of plaintiff's requests for subpoenas and his motion for continuance deprived him of any meaningful opportunity to present evidence in support of his objections, in violation of his constitutional right to Due Process of Law. We interpret plaintiff's allegations as attributing error of constitutional proportions to each of the Electoral Board's denials of subpoenas, to its denial of a continuance, and to the overall dilemma in which the combination of these denials placed plaintiff. We will therefore examine the propriety of each of the contested procedural rulings and also comment on their cumulative effect upon plaintiff's constitutional rights.

■■ The scope of our review of the Electoral Board's refusal to issue requested subpoenas is limited in two respects. First, in *Illinois Crime Investigating Comm. v. Buccieri*, 36 Ill.2d 556, 224 N.E.2d 236, it was held that judicial review of the issuance of administrative subpoenas is limited to a consideration of: 1) the constitutionality of the statute; 2) whether the contemplated agency proceedings are included within the statutory authority; 3) the reasonableness of the demand; and 4) the relevance of the information sought. We believe that this standard is equally applicable to judicial review of the denial of administrative subpoenas. Second, as a reviewing court, we should not substitute our judgment of relevancy and reasonableness for that of the Electoral Board, but should reverse only upon a finding that the denials of subpoenas were so prejudicially erroneous as to deprive plaintiff of Due Process of Law.

The first formal request for subpoenas occurred on January 3, 1972. Plaintiff sought the issuance of subpoenas *duces tecum* to the Chicago and Cook County Civil Service Commissions and to the City of Chicago for the production of records, or copies thereof, relating to the employment of each of the persons listed in Exhibit "E," attached to the objection and purporting to reflect the names of the circulators of the Berg petition. Also sought were subpoenas *duces tecum* to the Demo-

cratic Organization of Cook County and the Democratic Central Committee of Cook County for the production of records, or copies thereof, indicating the political sponsorship of each of the circulators listed in Exhibit "E." Plaintiff asserted that the requested subpoenas were relevant to those particular objections which alleged the imposition of illegal political patronage pressures as grounds for voiding the Berg petition. However, it was noted by the Chairman of the Electoral Board that each of those objections cited Exhibit "C," not Exhibit "E," in referring to an attached list of circulators. Plaintiff agreed that the objections contained typographical errors, but he gave assurances that Exhibit "E" reflected the true list of circulators. Nonetheless, the request for the subpoenas was denied by the Chairman, who expressed the following rationale for his ruling: any correction of the typographical errors would constitute an amendment of the objections, which, the Chairman asserted, he was unable to allow unilaterally; since the typographical errors could not be corrected, there existed no objection to which the subpoena request was directly relevant; the absence of relevancy, in turn, precluded the issuance of the subpoenas. While we agree that the subpoenas were properly denied, we reach that conclusion for a different reason, for the requested subpoenas were clearly relevant to the substance of those objections cited by plaintiff. The Electoral Board failed to address itself to the more substantial issue of whether the objections, to which plaintiff sought to attach his subpoenas, were well founded in law. We do address that issue and conclude that those objections were inherently defective.

■■ On January 3rd, plaintiff explained to the Electoral Board the theory of his "patronage" objections. He asserted that the entire circulating procedure, due to its reliance on political patronage employees and pressures, violated the rights of other candidates and necessitated the voiding of any petitions obtained by such means. Plaintiff cited, as support for this argument, the decision in *Shakman v. Democratic Organization of Cook County* (7th Cir. 1970), 435 F.2d 267, wherein the issue raised was whether the federal district court had erred in dismissing a challenge by voters, candidates and taxpayers to certain uses of patronage in the city of Chicago and in Cook County. The Court of Appeals reversed and ordered further proceedings. The essence of its opinion is reflected in the following passage: (435 F.2d at 270).

> "The interest in an equal chance and an equal voice is allegedly impaired in the case before us by the misuse of official power over public employees so as to create a substantial, perhaps massive, political effort in favor of the ins and against the outs. We conclude that these

interests are entitled to constitutional protection from injury of the nature alleged as well as from injury resulting from inequality in election procedure."

By his argument, plaintiff has implied that an injunction is not the only remedy inherent in the "constitutional protection" alluded to by the *Shakman* opinion, but that an additional remedy is the use of the objection procedures of the Illinois Election Code[5] as a means of voiding primary petition signatures obtained directly through political patronage pressures. We do not concur in this assumption. The Cook County Electoral Board is a creature of statute, with adjudicatory powers limited by its enabling legislation. Section 10—10 of the Election Code delegates to the Electoral Board the following duties:

"\* \* \* The electoral board shall take up the question as to whether or not the certificate of nomination or nomination papers are in proper form, and whether or not they were filed within the time and under the conditions required by law, and whether or not they are the genuine certificate of nomination or nomination papers which they purport to be, and whether or not in the case of the certificate of nomination in question it represents accurately the decision of the caucus or convention issuing it, and in general shall decide whether or not the certificate of nomination or nominating papers on file are valid or whether the objections thereto should be sustained and the decision of a majority of the electoral board shall be final subject to judicial review as provided in Section 10—10.1. The electoral board must state its findings in writing and must state in writing which objections, if any, it has sustained \* \* \*."

We interpret this provision as limiting the Electoral Board's scope of inquiry to the sole issue of whether a challenged nominating petition complies with the provisions of the Election Code pertaining thereto. Other provisions of the Election Code, particularly that delineating the composition of the Board[6] and that requiring an expedited notice and hearing procedure,[7] support the conclusion that our legislature did not intend the Electoral Board to entertain constitutional challenges to procedures employed in obtaining signatures for primary nominating petitions. We therefore hold that the objections to which plaintiff sought

[5] Ill. Rev. Stat. 1971, ch. 46, par. 10—8 *et seq.*

[6] Ill. Rev. Stat. 1971, ch. 46, par. 10—9(3):
"The county officers electoral board \* \* \* shall be composed of an associate judge resident in the county, to be designated by the chief judge, the county clerk, and the State's Attorney of the county, of whom the judge shall be the chairman."

[7] Ill. Rev. Stat. 1971, ch. 46, par. 10—10.

to attach his subpoenas were not well founded in law and that the Board's refusal to issue the subpoenas relevant to those objections did not constitute prejudicial error.

■■ The second request for subpoenas occurred on January 4, 1972. Plaintiff sought the issuance of subpoenas *duces tecum* to the Chicago Board of Election Commissioners for the production of those voter registration cards which the Board of Election Commissioners had been unable to produce as of January 4th—between 5,000 and 10,000 cards. The Electoral Board, again by its Chairman, denied this request on the dual grounds that it constituted an attempt to delay the hearing scheduled for January 5th and that it sought to shift the burden of proof to the candidate. Without commenting as to the persuasiveness of these rationales, we again perceive no prejudice incurred by plaintiff as a result of this ruling. To the extent that plaintiff claims that a failure to respond to the subpoenas would have constituted evidence that the signature cards were nonexistent, and the corresponding petition signatures fraudulent, we observe that testimony by appropriate members of the Board of Election Commissioners could have established the same point. To the extent that plaintiff intended to introduce the requested cards in evidence, we observe that the Board of Election Commissioners was already obligated by a federal consent order to produce the cards and that the administrative subpoena would have been superfluous. Therefore, while we do not deny the relevancy or the reasonableness of the subpoena request, we hold that its denial did not constitute prejudicial error denying Due Process of Law.

■■ The third request for subpoenas also occurred on January 4, 1972. Plaintiff sought the issuance of witness subpoenas for five circulators of Berg petition sheets. In support of this request, it was asserted that the sheets submitted by the five circulators contained false or fraudulent voter signatures. Plaintiff acknowledged, however, that Exhibit "A," attached to the original objections and purporting to reflect those sheets containing false and fraudulent signatures, made no reference to the sheets submitted by the circulators sought to be subpoenaed. Under those circumstances, the Chairman ruled that the requested subpoenas were irrelevant to any objections properly before the Electoral Board at that time. Plaintiff did not subsequently seek to amend his objections. We conclude that this request for subpoenas was properly denied.

■■ We hold that the Electoral Board did not commit reversible error in denying plaintiff's subpoena requests. In upholding these three rulings, however, we in no way intend to imply the existence of unlimited discretion in the Electoral Board to deny the issuance of subpoenas. The Electoral Board bears the responsibility for determining

whether a candidate has evidenced the requisite popular support to justify his or her inclusion on the ballot, and we believe that it should encourage the securing of all evidence relevant to that ultimate issue. When the Electoral Board is presented with reasonable requests for subpoenas which are relevant to matters under inquiry, and where the testimony or records sought may constitute evidence before the Electoral Board, the requests should be granted. Reviewing courts should not countenance arbitrary applications of procedural rules, if the effect is to frustrate the full presentation of evidence in support of or defense to objections to nominating petitions.

On January 4, 1972, plaintiff submitted to the Electoral Board a motion for a continuance. Plaintiff has strenuously contended that the denial of this motion in effect denied him an opportunity to present evidence to support his objections. The merits of the motion were argued primarily on January 4th, at which time plaintiff referred the Electorial Board to the federal court order of December 30, 1972, which had granted him access to voter registration cards in the possession of the Board of Election Commissioners and had established a timetable for inspecting the cards. Plaintiff informed the Electoral Board that, as of January 4th, the Board of Election Commissioners had been unable to locate one-third of the cards and was behind schedule in producing the rest. No bad faith was alleged, the delay being attributed to the enormity of the task undertaken. A continuance until January 14, 1972, or any other reasonable date, was requested to allow the Board of Election Commissioners to complete their task and plaintiff to correlate, assimilate and organize his evidence for presentation. In opposition to the motion, counsel for the candidate asserted his client's desire for a speedy disposition of the matter before the Electoral Board in order to ensure full appellate review prior to certain ballot deadlines. Counsel for the Board of Election Commissioners, also in opposition to the motion, argued that his client's failure to comply with the federal court was due to plaintiff's insistence on inefficient and time-consuming procedures. The motion was taken under advisement on January 4th. On January 5th the Electoral Board inquired whether plaintiff was prepared to present any evidence on any of his objections at that time. The response was negative. At that point, the motion for a continuance was denied.

■■ Rule 3 of the Rules of Procedure adopted by the Electoral Board provided as follows: "There will be no continuance or resetting of the hearing on objections except for good cause shown." It is our conclusion that plaintiff's motion for a continuance was not supported before the Electoral Board by "good cause shown." This conclusion in no way re-

flects our judgment as to responsibility for the delay in the production of the voter registration cards. It was the Board of Election Commissioners that was obligated under the consent order to produce the cards, and they were under no obligation to accede to allegedly inefficient procedures recommended in good faith by plaintiff. We agree with plaintiff that he should not be penalized for his attempted cooperation. However, we must evaluate the denial of plaintiff's motion in the context of the time pressures under which the Electoral Board was statutorily compelled to operate. After the Electoral Board renders its decision, an aggrieved party has ten days in which to file a petition for judicial review. An additional ten days is allowed for any answer. Thereafter, further appeals may be taken to the Illinois Appellate Court and to the Illinois Supreme Court, perhaps consuming additional weeks. Meanwhile, applications for absentee ballots commence 100 days before the primary date for military personnel[8] and 30 days before the primary date for civilians.[9] Such ballots must be mailed immediately upon determination that the applicant is registered to vote.[10] Thus, the Electoral Board, which had to adjudicate scores of objections in a short period of time, was in no position to grant a continuance absent some clear indication that the continuance was warranted. We believe that, faced on January 5th with a motion for a second continuance, the Electoral Board was entitled to some evidence that plaintiff's objections were meritorious. By that date plaintiff's theretofore unsupported assessment of the validity of his objections was inadequate to support his motion for a continuance. If plaintiff, who admitted that he had already investigated approximately two-thirds of the voter registration cards, had submitted some documentation of fraud and reasonable projections from that evidence, the Electoral Board could have determined whether the objections were hopelessly unsupported, or whether they had such identifiable substance as to warrant a continuance to facilitate the presentation of additional evidence. Plaintiff was requested to make some evidentiary showing, but he declined, on the tactical grounds that he wished to avoid a "bifurcated" and unlawyerlike presentation. While these are admirable goals, we believe that a litigant's tactical preferences cannot be allowed to supplant the right of the Electoral Board to promote expeditious proceedings by allowing continuances only upon "good cause shown." Plaintiff had the opportunity to make such a showing, but refused. Under these circumstances, it was not error to deny his motion for a continuance.

---

[8] Ill. Rev. Stat. 1971, ch. 46, par. 20—2.
[9] Ill. Rev. Stat. 1971, ch. 46, par. 19—2.
[10] Ill. Rev. Stat. 1971, ch. 46, pars. 19—4 & 20—4.

Two further matters remain for our attention. First, plaintiff has argued that the cumulative effect of the Electoral Board's refusal to issue subpoenas and to grant a continuance placed him in an untenable position, in that he was denied process to obtain evidence and then refused a continuance because he could produce no evidence. While we appreciate the dilemma plaintiff faced, we cannot attribute it to the Electoral Board's exercise of discretion, nor to any denial of Due Process of Law. Rather, plaintiff was to some extent a victim of his own tactical decisions, and, perhaps equally a victim of the limitations inherent in our statutory scheme for challenging primary petitions. Plaintiff has also contended that he was denied an opportunity to present evidence after his motion for a continuance was denied. We note, however, that the record reflects no attempt by plaintiff to introduce any evidence. On the contrary, the record of the proceedings before the Electoral Board on January 5th adequately reflects plaintiff's intention to "stand on his motion for a continuance." We therefore reject this contention.

We hold that the proceedings before the Electoral Board did not deny plaintiff Due Process of Law. In view of the foregoing, we affirm.

Judgment affirmed.

SCHWARTZ and LEIGHTON, JJ., concur.