RALPH NADER *et al.*, Petitioners-Appellants, v. ILLINOIS STATE BOARD OF ELECTIONS *et al.*, Respondents-Appellees.

First District (4th Division)    No. 1—04—2910

Opinion filed November 18, 2004.

Libertarian Party of Illinois, of Hinsdale (Andrew B. Spiegel, of counsel), for appellants.

Lisa Madigan, Attorney General, of Chicago (Gary Feinerman and Brett E. Legner, Assistant Attorneys General, of counsel), for appellees.

JUSTICE QUINN delivered the opinion of the court:

Petitioners Ralph Nader, Jan Pierce, and their slate of electors, Daniel J. Kairis, Joshua L. Kairis, Bradley A. Kairis, Stedd Revesz,

Andrew Chrucky, Ron J. Keller, Charles Hamilton, John W. Arco, Kristin Cotts, Betty J. Schuenuman, Mark Villay, Lance D. Goebel, Jim Senyszyn, Roberto Ruiz, William Borchert, Kathy Chrucky, Michael Patrick Ziri, Pete Caithamer, Monica Spegar, Lucille Hiller, Charles M. Piper and Ron Felton, Jr. (Candidates), filed a nominating petition with the State Board of Elections (Board) seeking to have their names placed on the Illinois ballot for the offices of President, Vice-President, and electors of President and Vice-President in the upcoming general elections on November 2, 2004. Sustaining objections to numerous signatures in the Candidates' petition, the Board refused to certify their candidacy. The Candidates appeal from the judgment of the circuit court upholding the Board's decision. On appeal, the Candidates argue that the circuit court erred in affirming the Board's decision because (1) the Board acted *ultra vires* when it mechanically added page numbers to the Candidates' petition and (2) the Board improperly denied their request to issue subpoenas in an effort to investigate whether those who compiled the objections to their nominating petition were State employees working on State time. For the following reasons, we affirm the judgment of the circuit court.

## BACKGROUND

On June 21, 2004, the Candidates filed their nominating petition containing 32,437 signatures with the Board located in Springfield, Illinois. The Candidates' petition sheets were hand-numbered from page 1 to page 3,659, with each number located at the bottom-center of each page. Many of the handwritten numbers, however, were illegible, and many of the sheets were misnumbered (even though the handwritten page numbers went up to 3,659, there were only 3,304 actual petition sheets).

After the petition sheets were filed, members of the Board mechanically stamped page numbers 1 though 3,304 at the bottom left of each page. Thus, each petition sheet contained two page numbers: a handwritten page number and mechanically stamped page number.

On June 28, 2004, John Tully, Jr. (Objector), filed an objection to the Candidates' petition pursuant to section 10—8 of the Election Code (10 ILCS 5/10—8 (West 2002)), challenging approximately 19,300 signatures contained therein. Specifically, the Objector alleged that many of the signatures either were not from duly registered voters or were not genuine. In his petition, the Objector referred to the signatures he believed were invalid by citing to the Board's mechanical page numbers.

On July 6, 2004, the Board convened as the State Officers Electoral Board (Electoral Board) and appointed a hearing officer to conduct an

inquiry into the Objector's allegations. During the hearing, the Candidates filed a motion requesting that the Electoral Board subpoena the payroll records of certain named State employees who allegedly performed work on the Objector's petition at taxpayer expense. The Candidates argued that, if true, such acts would violate article 9, the election interference provisions (10 ILCS 5/9—25.1 (West 2002)), and several laws contained in article 29, the "Prohibitions and Penalties" section, of the Election Code (10 ILCS 5/29—1 *et seq.* (West 2002)).[1] The hearing officer held that the Electoral Board had no power to hear or investigate the Candidates' alleged violations of the Election Code and declined to issue any subpoenas. The Electoral Board, adopting the hearing officer's opinion, also declined to issue the requested subpoenas.

After conducting an examination into the Chicago-based petition signatures, the Electoral Board sustained 12,327 of the objections, leaving the Candidates with 20,110 valid signatures; approximately 5,000 signatures short of the 25,000 required under Illinois law (10 ILCS 5/10—3 (West 2002)). When the Candidates were able to rehabilitate only 72 of the stricken signatures, on August 19, 2004, the Board, sitting as the Electoral Board, entered an order that their names not appear on the November 2, 2004, ballot.

On August 27, 2004, the Candidates filed a petition for judicial review of the Board's decision in the circuit court of Cook County requesting that the court reverse the Board's decision removing them from the ballot.[2] In their request for review, the Candidates did not

---

[1] Specifically, in their motion the Candidates argued that the Objector and those who aided him violated section 29—4, "Prevention of voting or candidate support," section 29—17, "Deprivation of Constitutional Rights—Liability," and section 29—18, "Conspiracy to prevent vote—Liability."

[2] Before filing suit in the circuit court of Cook County and while the objection to their petition was still pending before the Board, on July 27, 2004, the Candidates filed suit in federal court seeking a preliminary injunction requiring that the Board place their names on the ballot. In their request for a preliminary injunction, the Candidates raised several constitutional challenges to provisions in the Illinois Election Code, including the requirement that any candidate not nominated by a party receiving at least 5% of votes in the most recent statewide election must obtain at least 25,000 signatures from qualified voters, the address for each voter who signed their petition must be the address at which the voter is registered to vote, and the petitions be submitted to the Board at least 134 days before the election. See *Nader v. Keith*, No. 04—3183, slip op. at 2 (7th Cir. September 22, 2004). The Seventh Circuit rejected the Candidates' arguments, finding that these provisions were neither unreasonable nor constitutionally infirm. See *Nader*, slip op. at 6.

dispute the factual findings of the Board concerning the validity of their petition, but instead challenged the Board's interpretation of the Election Code. On September 23, 2004, Circuit Court Judge Nathaniel R. Howse, Jr., in a well-reasoned order, affirmed the decision of the Board, finding that (1) the Board correctly held that it had no power to issue subpoenas for payroll records or investigate the Candidates' alleged violations of the Election Code and (2) the Board's act of mechanically numbering the Candidates' petition was "reasonable and in furtherance of its legislative directed purpose to administer the elections and protect the integrity of the electoral process."

On October 7, 2004, the Candidates filed a notice of appeal in the circuit court. As part of their notice, which was directed to this court, the Candidates requested a supervisory order from the Illinois Supreme Court pursuant to Rule 383 (188 Ill. 2d R. 383) placing their names on the November 2 ballot. The Candidates also filed an "Emergency Motion To Place Appeal On Accelerated Docket" with this court, pursuant to Supreme Court Rules 311 and 361 (155 Ill. 2d Rs. 311, 361), requesting that their appeal be heard by this court in an expedited manner. On October 8, 2004, this court entered an order granting the Candidates' motion and allowing the parties to file memoranda in lieu of formal briefs. This court also set the expedited briefing schedule requested by the Candidates, which required the Candidates' filing to be filed on or before October 13, 2004, the Objector's filing by October 20, 2004, and the Candidates' reply by October 25, 2004. Pursuant to this court's order, any portion of the record upon which the parties wished to rely was required to be submitted as an appendix to their filing.

On October 13, 2004, the Candidates filed a request in the Illinois Supreme Court for a supervisory order pursuant to Rule 383 mandating that "the Illinois Appellate Court for the First District is ordered to order the Circuit Court of Cook County to enter an order reversing the decision of the State Board of Elections, sitting as the State Officers Electoral Board, and to order the State Board of Elections to certify Ralph Nader, Jan Pierce and his slate of Presidential Electors on the ballot." On October 19, 2004, the supreme court denied their request.

While this court granted the Candidates' initial request to file a reply brief on or before October 25, 2004, because time is of the essence, we issued this opinion on October 22, 2004, less than two weeks before the election that the Candidates seek to be a part of occurs. In doing so, we have considered the fact that the Candidates' petition for an expedited appeal, their October 13, 2004, "Request for Supervisory Order," and their October 13 legal memorandum filed in accordance with Rule 311 are nearly identical in form and substance.

## ANALYSIS

■ As a creature of statute, the Board may exercise only the powers conferred upon it by the legislature. See *Vuagniaux v. Department of Professional Regulation*, 208 Ill. 2d 173, 187-88, 802 N.E.2d 1156 (2003); *Kozel v. State Board of Elections*, 126 Ill. 2d 58, 68, 533 N.E.2d 796 (1988). Any power or authority claimed by an administrative agency must find its source within the provisions of the statute by which the agency was created. *Vuagniaux*, 208 Ill. 2d at 187-88. "The agency's authority must either arise from the express language of the statute or 'devolve by fair implication and intendment from the express provisions of the [statute] as an incident to achieving the objectives for which the [agency] was created.' " *Vuagnizux*, 208 Ill. 2d at 188, quoting *Schalz v. McHenry County Sheriff's Department Merit Comm'n*, 113 Ill. 2d 198, 202-03, 497 N.E.2d 731 (1986).

Under section 1A—1 of the Election Code, the legislature recognized the Board's "general supervision over the administration of the registration and election laws throughout the State," but mandated that the Board "perform only such duties as are or may hereafter be prescribed by law." 10 ILCS 5/1A—1 (West 2002). Section 10—10 of the Election Code sets forth the powers and duties of the Board when sitting as an electoral board:

> "The electoral board shall take up the question as to whether or not the certificate of nomination or nomination papers or petitions are in proper form, and whether or not they were filed within the time and under the conditions required by law, and whether or not they are the genuine certificate of nomination or nomination papers or petitions which they purport to be, and whether or not in the case of the certificate of nomination in question it represents accurately the decision of the caucus or convention issuing it, and in general shall decide whether or not the certificate of nomination or nominating papers or petitions on file are valid or whether the objections thereto should be sustained and the decision of a majority of the electoral board shall be final subject to judicial review as provided in Section 10—10.1. The electoral board must state its findings in writing and must state in writing which objections, if any, it has sustained." 10 ILCS 5/10—10 (West 2002).

"Under section 10—10 of the Election Code, the function of an electoral board is limited to a consideration of objections to a candidate's nomination papers." *Kozel*, 126 Ill. 2d at 68; see *Wiseman v. Elward*, 5 Ill. App. 3d 249, 257, 283 N.E.2d 282 (1972) (interpreting section 10—10 "as limiting the Electoral Board's scope of inquiry to the sole issue of whether a challenged nominating petition complies with the provisions of the Election Code pertaining thereto").

Generally, in cases involving review of an electoral board's decision, its factual findings are presumed true and correct, and those determinations will not be disturbed by a reviewing court unless they are against the manifest weight of the evidence. See *Bill v. Education Officers Electoral Board of Community Consolidated School District No. 181*, 299 Ill. App. 3d 548, 550-51, 701 N.E.2d 262 (1998); *King v. Justice Party*, 284 Ill. App. 3d 886, 888, 672 N.E.2d 900 (1996). No court, however, is bound by either the Board's conclusions of law or its interpretation of a statute. See *Merisant Co. v. Kankakee County Board of Review*, 352 Ill. App. 3d 622, 625-26 (2004); *King*, 284 Ill. App. 3d at 888. Review of those decisions is *de novo*. See *Brennan v. Kolman*, 335 Ill. App. 3d 716, 719, 781 N.E.2d 644 (2002).

## I. MECHANICALLY ADDED PAGE NUMBERS

■ The Candidates first argue that the Board violated section 10—4 of the Election Code when it mechanically added page numbers to the Candidates' petition.[3] The Candidates contend that, because no provision in the Election Code permits the Board to mechanically add page numbers to a candidate's nominating petition once filed, the action was *ultra vires*, rendering the entire proceedings before the Board "null and void." The Candidates also argue that, because the Objector cited to the Board's void page numbers in referring to which of the petition signatures he believed were invalid, "he failed to comply with the requirements of 10 ILCS 5/10—8 because he failed to state fully the nature of the objections to the nominating petitions by failing to reference any page numbers on which his objections appear." Though characterizing the result as "harsh," the Candidates contend that the Objector's petition should have been stricken. We disagree with the Candidates' arguments for two reasons.

First, the language in section 10—4 upon which the Candidates rely, *i.e.*, that a "petition, when presented or filed, shall not be withdrawn, altered, or added to," is a limitation placed, not upon the Board, but upon a potential candidate. Section 10—4, entitled "Form of petition for nomination," sets forth numerous requirements for "[a]ll petitions for nomination under this Article 10 for candidates for public office in this State," including what each sheet in the petition must contain, how each signature must appear, where the circulator's

---

[3]Section 10—4 of the Election Code states, in pertinent part:

"A petition, when presented or filed, shall not be withdrawn, altered, or added to, and no signature shall be revoked except by revocation in writing presented or filed with the officers or officer with whom the petition is required to be presented or filed, and before the presentment or filing of such petition." 10 ILCS 5/10—4 (West 2002).

verified statement must be placed on each sheet, what must be contained in that verified statement, how the sheets must be bound together before they are filed with the Board, etc. See 10 ILCS 5/10—4 (West 2000). These requirements are not directives to or limitations upon the power of the Board in determining the validity of a candidate's nominating papers; they are requirements a candidate must adhere to in filing his petition or risk having that petition invalidated. See *Girot v. Keith*, 341 Ill. App. 3d 902, 904, 793 N.E.2d 935 (2003) (stating that provisions contained in section 10—4, such as "requiring *candidates* to securely bind and number the petitions," are "mandatory, and failing to comply with even one of them will result in the petitions' invalidation" (emphasis added)); *Stephens v. Education Officers Electoral Board Community College District No. 504*, 236 Ill. App. 3d 159, 162, 603 N.E.2d 642 (1992) (finding that "section 10—4 prohibits *candidates* from filing multiple sets of nomination papers for a single office" (emphasis added)); *Anthony v. Butler*, 166 Ill. App. 3d 575, 580, 579 N.E.2d 1193 (1988) (construing nearly identical language in section 7—10 of the Election Code as prohibiting "a *candidate*" from filing "multiple sets of nominating papers" because to do so "would also substantially burden the Board in its efforts to determine the validity of signatures appearing in a candidate's nominating papers" (emphasis added)).

Here, the plain language in section 10—4 upon which the Candidates rely merely prohibits a potential candidate from doing anything to his petition once it is "presented or filed," be it withdrawing it, altering it, or adding to it. See 10 ILCS 5/10—4 (West 2002). It would be unreasonable to read this language, contained in a provision of the Election Code dealing specifically with requirements imposed upon a candidate who seeks to file a nominating petition, as a limitation upon the Board. For instance, while the Board can "invalidate" a potential candidate's petition if the mandates of section 10—4 are not met, it cannot simply "withdraw" a petition filed by a candidate. Simply put, the Board cannot "withdraw" something it did not file. Therefore, because the requirements in section 10—4 do not limit the powers or actions of the Board, the Candidates cannot rely upon language in section 10—4 to invalidate the Board's act of numbering the pages of their petition.

Second, far from being an *ultra vires* act, mechanically numbering the Candidate's petition was reasonably incidental " 'to achieving the objectives for which the [Board] was created.' " *Vuagnizux*, 208 Ill. 2d at 188, quoting *Schalz*, 113 Ill. 2d at 202-03. Section 10—4 of the Election Code mandates, *inter alia*, that the petition sheets be "numbered consecutively." 10 ILCS 5/10—4 (West 2002). This "consecutive page

number" requirement found in section 10—4 is mandatory, and a potential candidate who does not substantially comply with it risks having his nominating petition invalidated. See *El-Aboudi v. Thompson*, 293 Ill. App. 3d 191, 192, 687 N.E.2d 1166 (1997); *King*, 284 Ill. App. 3d at 890; *Wollan v. Jacoby*, 274 Ill. App. 3d 388, 393, 653 N.E.2d 1303 (1995); *Hagen v. Stone*, 277 Ill. App. 3d 388, 391, 660 N.E.2d 189 (1995); *Jones v. Dodendorf*, 190 Ill. App. 3d 557, 560, 546 N.E.2d 92 (1989).

This "consecutive page number" requirement is not simply a mundane rule or insidious, formalistic trap to keep independent candidates off the ballot. Rather, it aids those persons who choose to comb through what is likely to be voluminous pages of a nominating petition in identifying " 'specific pages' " or " 'information contained thereon by reference to a page number' " and "prevents tampering, thereby preserving not only the integrity of the petitions submitted, but also the election process in general." *Jones*, 190 Ill. App. 3d at 562; *Wollan*, 274 Ill. App. 3d at 394. Without page numbers that are accurately numbered in consecutive order, there may be "no way to effectively ascertain whether additional pages were later inserted or whether original pages were missing." *Jones*, 190 Ill. App. 3d at 562.

Here, the Board's act of correcting the Candidates' misnumbered and, sometimes, illegible handwritten page numbers by mechanically stamping correct page numbers onto each petition sheet not only furthered the purposes behind the "consecutive page number requirement," *i.e.*, aiding an objector's identification of alleged deficiencies in the petition, protecting the integrity of the petition by ensuring that no pages of the petition are missing, and preventing the possibility of tampering (see *Jones*, 190 Ill. App. 3d at 562; *Wollan*, 274 Ill. App. 3d at 394), it also aided its own internal processing of the Candidate's petition. In this sense, the mechanical page numbers are no different from the stamp bearing the date and time the petition was filed and received by the Board. See 10 ILCS 5/10—6.2 (West 2002) (stating that the Board "shall endorse" on the petition "the day and the hour at which each petition was filed"). Though the Election Code does not expressly permit the Board to mechanically add page numbers to a candidate's petition, the Board's act was both necessary and reasonably incidental to achieving the purposes for which it was created: administrating and protecting the integrity of the election laws of Illinois. See 10 ILCS 5/1A—1 (West 2002); *Jones*, 190 Ill. App. 3d at 562; *Wollan*, 274 Ill. App. 3d at 394.

## II. SUBPOENAS

■ The Candidates next argue that the Electoral Board improperly

denied their motion to subpoena information in an effort to determine whether the Objector's petition was compiled in violation of several provisions in the Election Code. Specifically, the Candidates alleged that State employees aided the Objector in sifting though the Candidates' nominating petition searching for suspect signatures while being paid by whichever government agency employed them. The Candidates argue that the Electoral Board should have investigated their allegations and, if found true, should have stricken the Objector's petition.

Under section 10—10, the Electoral Board has the power to "administer oaths and to subpoena and examine witnesses and at the request of either party the chairman may issue subpoenas requiring the attendance of witnesses and subpoenas duces tecum requiring the production of such books, papers, records and documents as may be evidence of any matter under inquiry before" it. 10 ILCS 5/10—10 (West 2002). "The plain language of section 10—10 gives the chairman the discretion to issue subpoenas." *Craig v. Electoral Board of Oconee Township*, 207 Ill. App. 3d 1042, 1048, 556 N.E.2d 775 (1991). However, as stated above, under section 10—10 of the Election Code, the Electoral Board's "inquiry" is limited to whether a candidate's nomination petition complies with the requirements of the Election Code. See *Kozel*, 126 Ill. 2d at 68; *Wiseman*, 5 Ill. App. 3d at 257.

In this case, the Candidates sought to have the Electoral Board investigate the manner in which the Objector compiled his objections. The Electoral Board, however, is no more required or empowered to conduct an investigation into how the Objector's petition was compiled than it is to do so into the methods employed by the Candidates in obtaining signatures in their petition. Rather, the Electoral Board can determine only whether the Candidates' nomination petition complies with the requirements of the Election Code. Here, the Electoral Board was required to determine how many of the signatures in the Candidates' petition were invalid based on the Objector's allegations, *i.e.*, due to illegible signature, incomplete voter information, incomplete circulator verification, forgery, or voter fraud. The Electoral Board's authority to do anything must either "arise from the express language of the statute" or " 'devolve by fair implication and intendment from the express provisions of the [statute] as an incident to achieving the objectives for which the [agency] was created.' " *Vuagnizux*, 208 Ill. 2d at 188, quoting *Schalz*, 113 Ill. 2d at 202-03. Nowhere in the Election Code is the Electoral Board allowed or required to conduct an investigation into the propriety of the methods used by the Objector in raising his objections to a candidate's nominating petition.

Moreover, under section 10—10, the investigatory power of the

Electoral Board is specifically "limited to a consideration of objections to a candidate's nomination papers." *Kozel*, 126 Ill. 2d at 68; *Wiseman*, 5 Ill. App. 3d at 257. In other words, its inquiry is limited to the validity of those objections; whether those objections were compiled by State employees in violation of article 9 of the Election Code or other sections of the Election Code is simply not relevant to the issues of whether the Candidates' nominating papers satisfied the formal requirements in section 10—4 and whether the petition contained enough valid signatures to be placed on the November 2 ballot. The Electoral Board correctly rejected the Candidates' subpoena request. See *Wiseman*, 5 Ill. App. 3d at 257-58 (finding that the Electoral Board properly refused to issue subpoenas requested by objectors relevant to issues beyond its scope of inquiry).

We are mindful that access to a place on the ballot is a substantial right that should not be denied lightly. *Welch v. Johnson*, 147 Ill. 2d 40, 56, 588 N.E.2d 1119 (1992). However, the Candidates do not question the Board's factual findings which resulted in striking 12,255 signatures on their nominating petition, leaving only 20,182 valid signatures; almost 5,000 signatures short of the 25,000 required. Based upon the reasons mentioned above, we find that the circuit court properly affirmed the decision of the Board.

Affirmed.

REID, P.J., and KARNEZIS, J., concur.