No. 2--08--0626          Filed: 9-9-08

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| DAVITA SIEGEL, | ) | Appeal from the Circuit Court |
| | ) | of Lake County. |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | No. 08--MR--563 |
| | ) | |
| LAKE COUNTY OFFICERS ELECTORAL | ) | |
| BOARD; WILLARD R. HELANDER, | ) | |
| MARGARET A. MARCOUILLER, and | ) | |
| SALLY D. COFFELT, as Members of the | ) | |
| Lake County Officers Electoral Board; and | ) | |
| MICHAEL J. WALLER, as Lake County | ) | |
| State's Attorney, | ) | |
| | ) | |
| Respondents | ) | |
| | ) | Honorable |
| (Eric Burgess, Donald R. Castella, and | ) | Raymond J. McKoski, |
| Joel A. Finfer, Respondents-Appellants). | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the opinion of the court:

Respondents Eric Burgess, Donald R. Castella, and Joel A. Finfer appeal the trial court's

order reversing the decision of the Lake County Officers Electoral Board (the Board) to exclude

petitioner, Davita Siegel, from the November 2008 general election ballot as the Democratic

candidate for member of the Lake County Board. On appeal, respondents assert that the Board

correctly excluded petitioner from the ballot and contend that (1) the trial court erred when it

determined that respondents waived their argument that the District Committee meeting took place

on a date other than that set forth in the resolution to fill the vacancy in nomination, and (2) the trial

court erred when it determined that the placement of an incorrect date on the resolution was a de minimis error and constituted substantial compliance with a mandatory requirement of section 7--61 of the Election Code (10 ILCS 5/7--61 (West 2006)). We affirm.

The underlying facts reflect that no candidate appeared on the February 2008 Democratic primary ballot for the office of member of the Lake County Board, District 20, and a vacancy in nomination therefore existed. The last day to fill the vacancy in nomination was April 7, 2008, and, on that date, petitioner filed her "Statement of Candidacy for District 20" as well as a "Resolution to Fill a Vacancy in Nomination" (the resolution) with the Lake County clerk's office. The resolution was executed by the "County Board Committee for the Democratic Party for the 20th District" (the District Committee). The resolution bore the signatures of Philip Hirsh, as the District Committee chairman, and Ivan Phillips, as the District Committee secretary, and stated that the District Committee met on April 6, 2008, and appointed petitioner to fill the vacancy at that time. The resolution was prepared and notarized by Nancy Shepherdson, and the jurat stated that the notarization occurred on April 6, 2008. Shepherdson also notarized petitioner's statement of candidacy, with that document also bearing the date of April 6, 2008.

Respondents filed a verified objectors' petition, claiming that the District Committee meeting (1) was never properly assembled, and (2) never occurred at all. In response, petitioner filed a motion to strike and dismiss respondents' objection, alleging that the District Committee had properly assembled, notice had been provided, and she was properly nominated as the candidate. In support of her motion, petitioner attached the affidavit of Nancy Shepherdson. In her affidavit, Shepherdson averred that the meeting of the District Committee took place on April 5, 2008. Shepherdson averred that she was present at the meeting and prepared the nominating papers.

Shepherdson averred that she witnessed and notarized the District Committee members' signatures and petitioner's signature. Shepherdson also averred that she mistakenly wrote the wrong date in the resolution and the statement of candidacy jurats when she completed the forms.

Respondents thereafter filed a response to petitioner's motion to strike and dismiss, in which they raised a specific objection to the facial validity of the resolution. In their response, respondents alleged that the resolution did not reflect the true date of the meeting. Petitioner filed a reply, objecting to respondents' response. Petitioner argued that respondents improperly amended their objectors' petition in violation of section 10--8 of the Election Code (10 ILCS 5/10--8 (West 2006)) because their specific objection to the date was not included in their objectors' petition and the time to add objections had expired. Petitioner alternatively argued that, even if the Board considered respondents' new objection, the resolution still substantially complied with the technical requirements of the Election Code. Petitioner maintained that affixing an incorrect date to the resolution was a technical defect, i.e., a scrivener's error, and was not an indicium of dishonesty.

At the hearing before the Board, one of the Board members described Shepherdson's entry of the incorrect date on the resolution as a "good faith error," and the other Board members described the entry as a scrivener's error. At the conclusion of the hearing, the Board determined, with one member dissenting, that respondents did not waive their objection to the sufficiency of the papers for petitioner's failure to include the true date of her nomination. The Board found that the nature of respondents' objection pertained to the manner of petitioner's selection by the District Committee and was, therefore, broad enough to encompass not only the objection that no meeting ever occurred but also the objection that no meeting occurred on the date specified in the resolution.

The Board found that the District Committee was duly constituted, had met, and had selected petitioner to fill the Democratic vacancy in nomination for the office of county board member on April 5, 2008. The Board also found that the District Committee members signed the resolution on April 5, 2008, and that petitioner attended the selection meeting and signed her statement of candidacy on April 5, 2008. The Board found that the resolution incorrectly averred that the selection meeting occurred on April 6, 2008. The Board found that Shepherdson, in her affidavit attached to petitioner's motion to strike and dismiss, acknowledged that she incorrectly wrote the date of April 6, 2008, in the jurats on the resolution and the statement of candidacy. The Board found that the correct date of the District Committee meeting, April 5, 2008, was not identified anywhere in petitioner's nominating papers.

The Board further found that the statutory provisions for filling a vacancy in nomination were mandatory and that petitioner's nominating papers did not disclose the true date of her selection to fill the vacancy in nomination. The Board found that it was duty-bound to enforce the mandatory provisions of the Election Code even where no evidence of bad-faith noncompliance was presented. The Board sustained respondents' objection and ordered that petitioner's name not appear on the November 2008 general election ballot.

Petitioner filed an action in the trial court for judicial review of the Board's decision, and the trial court reversed. The trial court determined that respondents had waived their objection that the resolution did not reflect the true date of the meeting. The trial court further determined that the placement of an incorrect date on the resolution was a de minimis error and constituted substantial compliance with the Election Code. The trial court thus ordered petitioner's name to appear on the

November 2008 general election ballot. Respondents timely appealed, and we expedited this appeal on our own motion pursuant to Supreme Court Rule 311 (155 Ill. 2d R. 311).

We are required to review the Board's decision rather than the trial court's decision. See Cinkus v. Village of Stickney Municipal Officers Electoral Board, 228 Ill. 2d 200, 212 (2008); see also Bergman v. Vachata, 347 Ill. App. 3d 339, 344 (2004), citing Lockhart v. Cook County Officers Electoral Board, 328 Ill. App. 3d 838, 841 (2002). We view an electoral board as an administrative agency (Cinkus, 228 Ill. 2d at 209), and the standards of review are essentially identical (Cullerton v. Du Page County Officers Electoral Board, No. 2--08--0605, slip op. at 2 (August 7, 2008)). An electoral board's findings of fact are deemed prima facie true and correct and will not be overturned on appeal unless they are against the manifest weight of the evidence. Cullerton, slip op. at 2, citing Cinkus, 228 Ill. 2d at 210. However, an electoral board's decisions on questions of law are not binding on a reviewing court, and a reviewing court will review de novo such questions. Cullerton, slip op. at 2-3, citing Cinkus, 228 Ill. 2d at 210-11. An electoral board's rulings on mixed questions of law and fact--questions on which the historical facts are admitted, the rule of law is undisputed, and the only remaining issue is whether the facts satisfy a statutory standard--will not be disturbed on review unless clearly erroneous. Cullerton, slip op. at 3, citing Cinkus, 228 Ill. 2d at 211.

Respondents contend first that the trial court erred when it found that they had waived their argument that the District Committee meeting took place on a date other than that set forth on the resolution to fill the vacancy in nomination. Respondents argue that their objection challenging the existence of an actual meeting was sufficient to encompass their specific objection that the meeting took place on a date other than that set forth in the resolution. Alternatively, respondents argue that,

once the Board heard evidence that the meeting did not occur on the date noted in the nominating papers, the Board was compelled to rule on that evidence and find the nomination to be invalid.

The Board is a creature of statute and its authority is derived from our legislature. Delay v. Board of Election Commissioners, 312 Ill. App. 3d 206, 209 (2000), citing Kozel v. State Board of Elections, 126 Ill. 2d 58, 68 (1988). Section 10--8 of the Election Code states in pertinent part:

"The objector's petition shall give the objector's name and residence address, and shall state fully the nature of the objections to the certificate of nomination or nomination papers or petitions in question, and shall state the interest of the objector and shall state what relief is requested of the electoral board." 10 ILCS 5/10--8 (West 2006).

The Election Code does not allow parties to file amendments to their objectors' petitions and does not authorize an electoral board to raise sua sponte objections to nominating petitions. Delay, 312 Ill. App. 3d at 210, citing Reyes v. Bloomingdale Township Electoral Board, 265 Ill. App. 3d 69, 72 (1994). This issue raises no factual question but only a question of law, which we review de novo. See, e.g., Cullerton, slip op. at 2-3, citing Cinkus, 228 Ill. 2d at 210-11.

Paragraph nine of respondents' objectors' petition stated the nature of their objection, alleging that the appointment of petitioner was improper because, on information and belief, the District Committee:

"was never validly assembled *** and *** no such meeting ever did occur as required by law *** in order to validly execute the resolution purporting to nominate the Candidate to fill the vacancy in nomination."

The provisions of the Election Code are mandatory and require the objectors to "state fully" the nature of their objection (see 10 ILCS 5/10--8 (West 2006)); however, the Election Code does

not address the degree of precision that constitutes compliance. See Morton v. State Officers Electoral Board, 311 Ill. App. 3d 982, 985 (2000). In the present case, respondents claimed that the District Committee meeting was never properly assembled and never occurred at all. The resolution reflected that the District Committee validly assembled on April 6, 2008, to fill the vacancy in nomination. Had the Board simply gone forth with the hearing on respondents' objection at this stage, without considering the subsequent motions, the evidence at the hearing would have revealed that no such meeting did in fact occur on April 6, 2008, as set forth in the resolution. When respondents responded to petitioner's motion to strike and dismiss by specifically alleging that the resolution did not reflect the true date of the meeting, they did not create a new objection but, rather, crafted a more precise argument regarding their objection.

Respondents' objection pertaining to the occurrence of the District Committee meeting was sufficient to include the specific objection pertaining to the true date of the meeting. We therefore conclude that the trial court erred when it ruled that respondents had waived their argument that the District Committee meeting took place on a date other than that set forth in the resolution to fill the vacancy in nomination. We hold that the Board properly determined that respondents had not waived the ability to challenge the sufficiency of the papers for petitioner's failure to include the true date of her nomination. Our resolution of this contention obviates the need to address respondents' alternative argument on the issue of waiver.

Respondents next contend that the trial court erred when it determined that the placement of an incorrect date on the resolution was a de minimis error and constituted substantial compliance with the mandatory requirement of section 7--61 of the Election Code (10 ILCS 5/7--61 (West 2006)). Respondents do not dispute that the resolution was timely filed or that, aside from the date

of the meeting, the content of the resolution was accurate. Respondents maintain, rather, that petitioner was required to identify the true date of the District Committee meeting on the resolution and that the appropriate sanction for this error is the exclusion of petitioner's name from the November 2008 general election ballot.

Section 7--61 provides in pertinent part:

"The resolution to fill a vacancy in nomination shall be duly acknowledged before an officer qualified to take acknowledgments of deeds and shall include, upon its face, the following information:

(a) the name of the original nominee and the office vacated;

(b) the date on which the vacancy occurred;

(c) the name and address of the nominee selected to fill the vacancy and the date of selection." 10 ILCS 5/7--61 (West 2006).

The Board found that the true date the District Committee duly constituted, met, selected petitioner to fill the vacancy in nomination, and signed the resolution was April 5, 2008. The Board found that the resolution incorrectly averred that the meeting occurred on April 6, 2008. The Board found that Shepherdson acknowledged that she incorrectly wrote the date of April 6, 2008, in the jurats on the resolution and the statement of candidacy. The Board, however, found that the Election Code provisions for filling a vacancy in nomination were mandatory and that petitioner's nominating papers did not disclose the true date of her selection to fill the vacancy in nomination. The Board concluded that it was duty-bound to enforce the mandatory provisions of the Election Code even where no evidence of bad-faith noncompliance was presented.

Respondents argue that the trial court had no basis upon which it could have determined that the incorrect date on the resolution was a scrivener's error and that the resolution substantially complied with the Election Code, because the Board made no such findings. Respondents argue that the provisions of section 7--61 are mandatory and should be construed strictly to ensure the integrity of the ballot. Because this case involves an examination of the legal effect of a given set of facts-- whether the information contained in the resolution complied with the requirements of the Election Code--the issue is best considered a mixed question of fact and law. See, e.g., Cardona v. Board of Election Commissioners, 346 Ill. App. 3d 342, 343 (2004) (stating that whether information contained in a receipt filed by a candidate complied with the requirements of the Election Code was a mixed question of fact and law). For mixed questions of fact and law, a clearly erroneous standard of review applies. See Cinkus, 228 Ill. 2d at 211; see also City of Belvidere v. Illinois State Labor Relations Board, 181 Ill. 2d 191, 205 (1998). Accordingly, we will not reverse the Board's decision unless it is clearly erroneous. Belvidere, 181 Ill. 2d at 205.

Under the plain language of the Election Code, "[t]he resolution to fill a vacancy in nomination *** shall include, upon its face, *** the name and address of the nominee selected to fill the vacancy and the date of selection." 10 ILCS 5/7--61 (West 2006). Legislative directives containing the word "shall" are typically interpreted to be mandatory. Jakstas v. Koske, 352 Ill. App. 3d 861, 863 (2004), citing Brennan v. Kolman, 335 Ill. App. 3d 716, 719 (2002). If a statute imposes requirements and expressly states that the failure to fulfill those requirements renders the ballot listing invalid, courts are generally bound to interpret the statute as mandatory. See Jakstas, 352 Ill. App. 3d at 863, citing Brennan, 335 Ill. App. 3d at 719. Here, section 7--61 contains such an express statement: "no candidate of the party for the office shall be listed on the ballot at the general election

unless such vacancy is filled in accordance with the requirements of this Section."  10 ILCS 5/7--61 (West 2006).  Because section 7--61 imposes directives containing the word "shall" and contains an express statement invalidating the ballot listing if the requirements are not fulfilled, it is considered a mandatory provision.  Our determination is also supported by Zerante v. Bloom Township Electoral Board, 287 Ill. App. 3d 976 (1997), in which the reviewing court concluded that the date-of-selection provision of section 7--61 is mandatory.  Therefore, the resolution must include on its face the date the nominee was selected to fill a vacancy in nomination.

The special concurrence employs language from Williams v. Butler, 35 Ill. App. 3d 532 (1976), reflecting inter alia that the right of access to a place on the ballot " 'should not be impeded by unreasonable, frivolous, or unnecessarily limiting requirements,' " to support extending the rationale from Craig v. Peterson, 39 Ill. 2d 191 (1968), and holding that a court may strictly enforce the Election Code's restrictions on candidacy to deny a candidate ballot access only where doing so is reasonable and necessary for the purposes of the Election Code.  Slip op. at 18, quoting Williams, 35 Ill. App. 3d at 536.  In doing so, however, the special concurrence would interpret the date requirement here as being directory and not mandatory.  Slip op. at 18.

In Craig, our supreme court permitted the relaxation of a mandatory ballot-initialing requirement under the Election Code, but did so under very limited factual circumstances not present here.  See Craig, 39 Ill. 2d at 197, 200-01 (pertaining to counting uninitialed absentee ballots and stating that the statutory commands would be "held only directory when applied in the context of the case before us").  In Reynolds v. Champaign County Officers Electoral Board, 379 Ill. App. 3d 423, 424 (2008), the reviewing court recognized our supreme court's abrogation of the Williams decision in Bowe v. Chicago Electoral Board, 79 Ill. 2d 469, 470 (1980), which held that the requirements

-10-

of section 7--10 of the Election Code were mandatory and not directory. In DeFabio v. Gummersheimer, 192 Ill. 2d 63, 66-67 (2000), our supreme court reaffirmed the mandatory nature of the initialing requirement of section 24A--10.1 of the Election Code. Given the plain language of section 7--61, the limited application of Craig, and the questionable authority of Williams, as well as our supreme court's reaffirmation of the mandatory nature of the Election Code's provisions, we decline to reclassify the date requirement of section 7--61 from mandatory to directory.

We note, however, that mandatory compliance does not necessarily mean strict compliance. Jakstas, 352 Ill. App. 3d at 864. Substantial compliance can satisfy even a mandatory provision of the Election Code. Jakstas, 352 Ill. App. 3d at 864, citing Brennan, 335 Ill. App. 3d at 720. In the present case, the Board found that Shepherdson acknowledged that she incorrectly wrote the date of April 6, 2008, in the jurats on the resolution and the statement of candidacy and that no evidence of bad-faith noncompliance was presented. Despite its findings, though, the Board concluded that it was duty-bound to enforce the mandatory provisions of the Election Code. The Board's reasoning was flawed and, thus, clearly erroneous, because it considered only the correctness of the date of selection and thus failed to consider whether the inclusion of an incorrect date in the resolution substantially complied with the mandatory provisions of the Election Code.

Respondents argue that the inclusion of an incorrect date on the face of the resolution must be grounds for striking the papers and, in support of their argument, cite In re Objection of McSparin, 352 Ill. App. 3d 352 (2004), and Zerante v. Bloom Township Electoral Board, 287 Ill. App. 3d 976 (1997). In both McSparin and Zerante, the reviewing court affirmed the invalidation of the candidate's nomination papers because the papers were facially invalid for not containing any date of selection on the face of the resolution, thus rendering the resolution legally insufficient.

McSparin, 352 Ill. App. 3d at 356-57; Zerante, 287 Ill. App. 3d at 980. Our case is distinguishable from both McSparin and Zerante, however, in that petitioner's resolution was facially valid, and both the true date of selection and the incorrect date fell within all statutory time constraints. See 10 ILCS 5/7--61 (West 2006). Shepherdson did affix a date to the resolution, albeit, by virtue of a scrivener's error, the incorrect date. The error in McSparin and Zerante was that of noncompliance, the complete failure to enter a date on the resolution, as opposed to the circumstances of the present case, in which an incorrect date was entered on the resolution by mistake. Because the factual circumstances are dissimilar, McSparin and Zerante are not persuasive authority. See also El-Aboudi v. Thompson, 293 Ill. App. 3d 191, 194 (1997) (noting that "a candidate does not substantially comply with the requirements where he [or she] completely ignores one of the statutory elements").

The provisions of the Election Code are designed to protect the integrity of the electoral process. Welch v. Johnson, 147 Ill. 2d 40, 56 (1992). Ultimately, though, access to a place on the ballot is a substantial right and not to be lightly denied. Nader v. Illinois State Board of Elections, 354 Ill. App. 3d 335, 345 (2004), citing Welch, 147 Ill. 2d at 56. The Board found that the District Committee members signed the resolution on April 5, 2008, and that the resolution incorrectly averred that the selection meeting occurred on April 6, 2008, but that there was no evidence of bad-faith noncompliance. A minor error in a candidate's nominating papers should not result in a candidate's removal from the ballot. Sullivan v. County Officers Electoral Board, 225 Ill. App. 3d 691, 693 (1992). Moreover, substantial compliance with the Election Code is acceptable when the invalidating charge concerns a technical violation that does not affect the legislative intent to guarantee a fair and honest election. Reynolds, 379 Ill. App. 3d at 425, citing Madden v. Schumann, 105 Ill. App. 3d 900, 903-04 (1982).

Here, other than objecting to the date of selection, respondents do not challenge the form of petitioner's nomination papers, their timeliness, or their authenticity. Petitioner's resolution was duly acknowledged pursuant to section 7--61, and the resolution included, on its face, the name of the original nominee and the office vacated; the date on which the vacancy occurred; and the name and address of the nominee selected to fill the vacancy. But for the scrivener's error, petitioner's resolution complied in every mandatory aspect of section 7--61. Further, this type of error does not impair the integrity of the electoral process, as one of the board members herself characterized the error as "a good faith error." Under the circumstances presented, we conclude that petitioner has substantially complied with section 7--61 of the Election Code, thus satisfying the mandatory provision in question.

We affirm the judgment of the circuit court of Lake County.

Affirmed.

BURKE, J., concurs.

JUSTICE O'MALLEY, specially concurring:

Although I agree with the result the majority reaches in this case, I disagree with its analysis.

As the majority notes, section 7--61 of the Election Code provides that a "resolution to fill a vacancy in nomination *** shall include, upon its face, *** the date of selection." 10 ILCS 5/7--61 (West 2006). The purpose of this requirement is to allow the certifying authority to determine if the resolution was sent within three days of the selection, as is required under the Election Code. See 10 ILCS 5/7--61 (West 2006) (the resolution "shall be sent *** to the certifying officer or board within 3 days of the action by which the vacancy was filled"); Zerante, 287 Ill. App. 3d at 980. Thus, for the purposes of this case, section 7--61 has two relevant requirements. First, it requires that a

nominating resolution be filed with the proper certifying authority within three days of a candidate's selection. Second, in order to allow the certifying authority to evaluate compliance with the first requirement, section 7--61 requires that any nominating resolution state on its face the date of the candidate's selection.

There are two published decisions addressing resolutions that did not meet the second requirement--the date requirement--of section 7--61. In the first case, Zerante, the resolutions at issue indicated the date on which they were signed, but they gave no indication of the date on which the candidate had been selected for nomination. Zerante, 287 Ill. App. 3d at 979. Though the court was able to deduce from the record that the selection must have taken place within a seven-day period, it could reach no conclusion as to whether the selection took place within three days of the filing of the resolutions. Zerante, 287 Ill. App. 3d at 979. Thus, the resolutions' failure "to specify the date upon which the petitioner was selected *** prevent[ed] a determination as to whether the resolutions were transmitted to the certifying authority in a timely fashion." Zerante, 287 Ill. App. 3d at 979. The court in Zerante further held that the date requirement of section 7--61 must be considered mandatory under the circumstances presented there: "It is this inability of the certifying authority to determine [whether the resolution was timely filed] *** that leads us to conclude that the provision of section 7--61 that states that a resolution shall contain the date of selection is mandatory." Zerante, 287 Ill. App. 3d at 980. Likewise, in the second case, McSparin, the resolution "did not contain the date upon which [the candidate] was selected" (McSparin, 352 Ill. App. 3d at 356) and was therefore insufficient. The decision in McSparin contains no indication as to whether there was any dispute that the candidate met the three-day filing requirement of section 7--61, but McSparin relied on the holding from Zerante that a resolution must be deemed insufficient where

it " 'prevent[s] a determination of whether the [resolution was] transmitted to the certifying authority in a timely fashion.' " McSparin, 352 Ill. App. 3d at 357, quoting Forcade-Osborn v. Madison County Electoral Board, 334 Ill. App. 3d 756, 760 (2002), citing Zerante, 287 Ill. App. 3d at 980.

Although Zerante and McSparin discuss whether the date requirement of section 7--61 is mandatory, their holdings cannot be applied directly here, for two reasons. First, even though Zerante held the date requirement of section 7--61 to be mandatory, it did so expressly based on the idea that it was impossible to determine if the resolutions had been filed within three days of the candidate's selection. Thus, in Zerante, the resolutions failed the second requirement of section 7--61 (that it list the date of the candidate's selection), and, as a result, the court could not determine if the resolutions met the first requirement (that it be filed within three days of the candidate's selection). Here, even though the resolution failed the second requirement--it did not list the correct date of petitioner's selection--evidence affirmatively established that the resolution met the first requirement--petitioner was selected within three days of the date the resolution was filed. The second reason the holdings in Zerante and McSparin do not apply directly to this case is that neither case discusses the effect of conclusive evidence of the real date of the candidate's selection and the timely filing of the resolution. The question presented here, and not presented in Zerante and McSparin, is whether the date requirement of section 7--61 requires strict compliance when it can be determined conclusively that the resolution was timely filed. In other words, if a candidate unquestionably passes the first requirement of section 7--61 (that the resolution be timely filed), does the second requirement (the date requirement), which is meant to ensure conformity with the first requirement, still require strict compliance?

The view that the date requirement of section 7--61 must be enforced strictly, even if it can be otherwise determined that the resolution was timely filed, finds support in our case law. In Powell v. East St. Louis Electoral Board, 337 Ill. App. 3d 334 (2003), the petitioner "timely filed *** her nominating papers and a receipt evidencing the filing of a statement of economic interests." Powell, 337 Ill. App. 3d at 338. However, the receipt was not file-stamped by the county clerk, as was required under section 10--5 of the Election Code. See 10 ILCS 5/10--5 (West 2000) (candidate whose statement of economic interests is not on file with the officer with whom the nomination papers are filed must "file with the officer with whom the nomination papers are filed a receipt from the officer with whom the statement of economic interests is filed showing the date on which such statement was filed"). The petitioner argued that she " 'substantially and in good faith' " complied with the Election Code and that she should not be removed from the ballot " 'for merely technical violations.' " Powell, 337 Ill. App. 3d at 338. Based on its reading of our supreme court's decision in DeFabio v. Gummersheimer, 192 Ill. 2d 63 (2000), the court rejected this argument: "Gummersheimer held that a mandatory provision of the Election Code must be enforced even where parties agree there is no knowledge or evidence of fraud or corruption." Powell, 337 Ill. App. 3d at 338. The holding in Powell would seem to indicate that in all instances candidates must be removed from ballots for failure to comply fully with the Election Code. See McSparin, 352 Ill. App. 3d at 358-61 (Kuehn, J., specially concurring) (applying Powell's strict compliance rule). However, Powell is not beyond reproach. As noted, it based its holding on our supreme court's decision in Gummersheimer. A closer reading of Gummersheimer reveals that it does not warrant the reading Powell gave it.

In Gummersheimer, all of the ballots cast in a particular precinct were invalidated because the election judges in that precinct did not initial the ballots, as was required under the Election Code. Gummersheimer, 192 Ill. 2d 63; see 10 ILCS 5/24A--10.1 (West 1998). The candidate who lost in the resulting ballot recount produced affidavits from the election judges, who attested that the absence of initials on the ballots was "due to mistake rather than to fraud or corruption," and on that basis the candidate argued that the initialing requirement of the Election Code should be relaxed and the uninitialed ballots counted. Gummersheimer, 192 Ill. 2d at 64-65. The supreme court rejected this argument and instead strictly enforced the relevant provision of the Election Code and ruled the uninitialed ballots invalid. Gummersheimer, 192 Ill. 2d at 65-69. However, the supreme court did not, as Powell argued, state a broad rule requiring strict enforcement of all provisions of the Election Code regardless of the practical utility of doing so. In fact, quite the opposite. In holding the uninitialed ballots to be invalid, the supreme court stressed the idea that the initialing requirement should be enforced because it served an important purpose under the Election Code: it helped prevent fraud in the form of surreptitiously-cast illegal ballots not approved by the election judges. Gummersheimer, 192 Ill. 2d at 66-69. The supreme court also contrasted the case before it with two of its previous cases, Pullen v. Mulligan, 138 Ill. 2d 21 (1990), and Craig v. Peterson, 39 Ill. 2d 191 (1968), in which the court relaxed the requirements of the Election Code to "permit[] the counting of *** uninitialed absentee ballots that are easily distinguished from in-precinct ballots." Gummersheimer, 192 Ill. 2d at 66. Thus, Powell misread Gummersheimer when it cited it for the proposition that courts must strictly enforce all provisions of the Election Code in all instances.

The exception referenced in Gummersheimer was based on the rule that a statute disenfranchising voters will be declared unconstitutional and not enforced in cases where its

application would be arbitrary or unreasonable or would not make a substantial contribution toward insuring the honesty and secrecy of the election. See Gummersheimer, 192 Ill. 2d at 66, citing Craig, 39 Ill. 2d at 194-97, and Pullen, 138 Ill. 2d at 49-54 (summarizing and relying on the holding in Craig). In Craig, the supreme court applied this rule to conclude that strict enforcement of the Election Code under the circumstances at issue would render an unconstitutional result. See Craig, 39 Ill. 2d at 197. The supreme court therefore applied the interpretive maxim that a court should "so interpret a statute as to promote its essential purposes and to avoid, if possible, a construction that would raise doubts as to its validity" and held that the relevant portion of the Election Code be considered directory, rather than mandatory, under the facts of that case. Craig, 39 Ill. 2d at 201.

Of course, the issue here is not the rights of voters but, rather, the rights of a candidate. However, restrictions on a candidate's access to a place on the ballot receive scrutiny similar to that imposed on statutes that tend to disenfranchise voters: "access to a place on the ballot is a substantial right not lightly to be denied," and it "should not be impeded by unreasonable, frivolous, or unnecessarily limiting requirements." Williams v. Butler, 35 Ill. App. 3d 532, 536 (1976), citing Jenness v. Fortson, 403 U.S. 431, 29 L. Ed. 2d 554, 91 S. Ct. 1970 (1971), and Lubin v. Panish, 415 U.S. 709, 39 L. Ed. 2d 702, 94 S. Ct. 1315 (1974); see also Welch v. Johnson, 147 Ill. 2d 40, 56 (1992) (adopting a portion of the above statement from Williams). Based on this language from Williams, I would extend the rationale from Craig and hold that a court may strictly enforce the Election Code's restrictions on candidacy to deny a candidate ballot access only where doing so is reasonable and necessary for the purposes of the Election Code. Where such a result would not be reasonable and necessary and thus would not be constitutional, a court must interpret the Election

Code in a way that avoids the constitutional infirmity associated with unnecessarily removing a candidate from a ballot.

As noted, the purpose of the date requirement in this case is to ensure compliance with another portion of section 7--61, which requires that nominating resolutions be filed within three days of a candidate's selection. Because petitioner here established that her nominating resolution was timely filed, strict enforcement of the date requirement under section 7--61 would serve no purpose recognized by the Election Code. Accordingly, I would hold that we must interpret the date requirement as being directory, and not mandatory, under the facts of this case. For that reason, I agree with the majority that petitioner should not be excluded from the ballot due to her failure to comply with the date requirement of section 7--61.

The majority misrepresents my position when it states that I propose to "reclassify the date requirement of section 7--61 from mandatory to directory." Slip op. at 11. I do not propose such a broad holding. I propose that, under the facts of this case, we must interpret the date requirement as directory instead of mandatory, even if we must in most other cases interpret the date requirement as mandatory. This is precisely the approach the supreme court followed in Gummersheimer, when it, as the majority states, "reaffirmed the mandatory nature" of a portion of the Election Code (slip op. at 11) but also reaffirmed its holding from Craig that otherwise-mandatory requirements may be relaxed "under very limited circumstances" (Gummersheimer, 192 Ill. 2d at 66). I believe the particular facts of this case present the type of "limited circumstances" that justified the holding in Craig.

The majority prefers not to expand "the limited application of Craig" because it was decided under "very limited factual circumstances not present here." Slip op. at 10. I cannot disagree that

the facts here are different--this is not a case of an election judge failing to initial ballots. My position is that we should extend the holding of <u>Craig</u> to these facts. Beyond noting a factual difference between this case and <u>Craig</u>, the majority offers no explanation as to why the supreme court's reasoning in <u>Craig</u> should not apply to the facts of this case. Instead, the majority abruptly changes subject to note that, even if the provision is mandatory in this case, it does not require strict compliance. Slip op. at 11. (The majority does not explain the rationale behind this counterintuitive rule that mandatory provisions do not require strict compliance.) The majority then classifies the incorrect date as "[a] minor error" (slip op. at 12). In <u>Craig</u>, upon which I rely, the supreme court could very well have declared the failure to initial the ballots "minor" and on that basis allowed the ballots to be counted. It did not. Instead, it ruled that the relevant portions of the Election Code should be interpreted as directory under the facts presented. The majority follows a different approach.

I also disagree with the majority's conclusion that the error here is "minor." Section 7--61 requires that the date appear on the face of the nominating resolution so that it can be checked for compliance with the time line contained in the same section. This appears to me to comprise a major, indeed perhaps the most substantive, portion of the section 7--61 requirements for a nominating resolution. I do not agree that the noncompliance with that requirement here was only minor. Nor do I share the majority's view that including an incorrect date somehow constitutes more substantial compliance than including no date at all. See slip op. at 12. In either case, the candidate will have failed to include the date of selection. The only real difference is that, in the case of an incorrect date, the noncompliance will be more difficult to uncover. Because I would hold that,

under the facts of this case, the date requirement of section 7--61 is directory rather than mandatory, the nature (minor versus substantial) of the error does not affect my view of this case.

The majority's reasoning is weakened further by its treatment of McSparin and Zerante. As noted, the majority's analysis hinges on its erroneous conception that the date error was minor. However, when it distinguishes McSparin and Zerante, the majority relies on the idea that the resolutions in those cases were "facially invalid," unlike this case, where "petitioner's resolution was facially valid, and both the true date of selection and the incorrect date fell within all statutory time constraints." Slip op. at 12. The majority offers no explanation as to why the "facial validity" of the resolutions should be considered significant; in fact, it does not even explain where it finds authority containing any requirement, or even any reference, to the notion of "facial validity." If facial validity is irrelevant to this case (as it must be, since the majority makes no reference to that idea anywhere in its analysis of this case), I do not understand why it should serve as a relevant basis to distinguish McSparin and Zerante.

The closest the majority comes to an explanation of this concept of "facial validity" is its statement that the resolution here was facially valid because "both the true date of selection and the incorrect date fell within all statutory time constraints." Slip op. at 12. If the majority intends to say that such facial validity is required, the majority is at odds with itself. The crux of its analysis is that a date error is a "minor error" that can be forgiven when the candidate actually complies with the statutory time constraints. This reasoning would apply equally regardless of whether the erroneous date on the resolution fell within the statutory time line (i.e., regardless of whether the erroneous date rendered the resolution facially invalid). After all, a scrivener could just as easily--probably even

more easily--make an error that would render the resolution facially invalid as a scrivener could make an error that would render the resolution facially valid.

If facial validity is significant to the majority's analysis, it becomes vital that a scrivener's error fall within the three-day statutory window. Any scrivener's error that does not would metamorphose into a monumental flaw, preventing the candidate from demonstrating that he or she actually complied with the statutory time line. This is quite a consequence, given that whether the scrivener's error renders a resolution facially valid or invalid is controlled solely by happenstance. Thus, at best, the majority's reference to "facial validity" adds nothing, and, at worst, it undercuts the whole of the majority's analysis.

As a final note, the majority appears to criticize my quotation of Williams above on the basis that Williams was abrogated by the supreme court's decision in Bowe. (Bowe actually explicitly endorses at least part of the holding in Williams (Bowe, 79 Ill. 2d at 470), and any purported abrogation of course has no impact on the validity of the language I quote.) Interestingly, not two full pages after this criticism, the majority relies on the exact same language. See slip op. at 12 ("access to a place on the ballot is a substantial right and not to be lightly denied"). The majority attributes this language to Nader, 354 Ill. App. 3d at 345, which cited Welch, 147 Ill. 2d at 56. A quick look at Welch reveals the original source of the language: Welch cites the same portion of Williams I quote above. Thus, it appears that the majority has accomplished the rare feat of declaring the basis of its own holding abrogated.