# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*Lucie B. v. Department of Human Services*, 2012 IL App (2d) 101284

---

| | |
|---|---|
| Appellate Court Caption | LUCIE B., Plaintiff-Appellant, v. THE DEPARTMENT OF HUMAN SERVICES, Defendant-Appellee. |
| District & No. | Second District<br>Docket No. 2-10-1284 |
| Rule 23 Order filed<br>Rule 23 Order withdrawn<br>Opinion filed | December 15, 2011<br><br>March 1, 2012<br>March 1, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The order of the Department of Human Services denying plaintiff's application for an individual care grant for her adoptive daughter based on claims that the daughter suffered from severe mental illness, had been diagnosed with bipolar disorder and psychotic tendencies, and was in her second short-term residential placement was vacated and the cause was remanded to the Department for further review on the ground that the summary denial of the application with no reference to the child's symptoms or an explanation for why those symptoms were insufficient to constitute "severely impaired reality testing" did not contain sufficient factual findings pursuant to section 10-50(a) of the Administrative Procedure Act. |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 10-MR-670; the Hon. Christopher C. Starck, Judge, presiding. |

| | |
|---|---|
| Judgment | Judgment reversed; final administrative decision vacated; cause remanded to Department of Human Services. |
| Counsel on Appeal | Kathryn M. Liss and Bernard H. Shapiro, both of Prairie State Legal Services, Inc., of Waukegan, for appellant. |
| | Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Janon E. Fabiano, Assistant Attorney General, of counsel), for appellee. |
| Panel | JUSTICE HUTCHINSON delivered the judgment of the court, with opinion.<br>Presiding Justice Jorgensen and Justice Bowman concurred in the judgment and opinion. |

## OPINION

¶ 1    In November 2009, plaintiff, Lucie B., submitted an application for an individual care grant on behalf of her adoptive daughter, S.B. Plaintiff's application claimed that S.B. suffered from severe mental illness, had been diagnosed with bipolar disorder and psychotic tendencies, and was currently in her second short-term residential placement. The Illinois Mental Health Collaborative for Access and Choice initially denied her application, and the Illinois Department of Human Services (the Department) denied her appeal. Plaintiff filed in the trial court a complaint seeking review of the Department's denial of her individual care grant application, pursuant to the Illinois Administrative Review Law (the Review Law) (735 ILCS 5/3-101 *et seq.* (West 2010)). The trial court affirmed the Department's decision. Plaintiff now timely appeals, contending: (1) the Department's final administrative decision failed to contain sufficient factual findings pursuant to section 10-50(a) of the Illinois Administrative Procedure Act (the Procedure Act) (5 ILCS 100/10-50(a) (West 2010)); (2) the Department's finding that S.B. did not qualify for an individual care grant was against the manifest weight of the evidence; and (3) the trial court abused its discretion in denying plaintiff's motion to reconsider. Because we find that the Department's decision did not contain sufficient findings, we reverse the trial court, vacate the Department's decision, and remand to the Department for further consideration, evaluation, findings, and decision.

¶ 2                                      I. Background

¶ 3    The record reflects that plaintiff has cared for S.B. since S.B. was four months of age.

Plaintiff formally adopted S.B. in 1996, when S.B. was three years of age. S.B. was exposed to alcohol and cocaine *in utero* and suffered abuse and neglect by her birth mother. When plaintiff filed her application for the grant, S.B. was 16 years old and being cared for in a short-term residential placement.

¶ 4 Plaintiff submitted her application for an individual care grant on November 11, 2009. Submitted with plaintiff's application were a number of documents outlining S.B.'s medical history. Those documents reflected that in June 2007 S.B. was admitted to Highland Park hospital after becoming upset with plaintiff, destroying property in the home, and setting a fire in front of the home. S.B. was hospitalized for one week followed by a one-week stay in a partial hospitalization program. In November 2007, S.B. was readmitted as an inpatient due to dangerous behaviors, including pulling out knives and attempting to open a car door while plaintiff was driving. During that hospitalization, S.B. exhibited thoughts of suicide and an inability to regulate her mood. In a letter dated January 28, 2008, a treating physician stated that S.B. had been diagnosed with mood disorder NOS (not otherwise specified) and that individuals with that disorder exhibit mood lability, emotional dysregulation, severe anxiety, poor judgment that often places them in dangerous situations, depressed mood, low self-esteem, poor frustration tolerance, and thoughts of suicide. The letter further specified that these symptoms have affected "all areas" of S.B.'s functioning and make it difficult for her to cope with day-to-day activities. The physician recommended that S.B. be placed in a long-term program at a residential treatment facility to meet her "emotional, academic, and treatment needs."

¶ 5 In December 2007, S.B. was admitted to the Midwest Center for Youth and Families after experiencing an increase in self-harming behavior and suicidal ideations. In a letter dated January 24, 2008, a treating physician noted that, during her admission, S.B. continued to exhibit self-harming behavior and suicidal ideations, displayed aggressive behavior, and experienced auditory and visual hallucinations. The letter stated that S.B.'s diagnosis was revised to "schizoaffective bipolar type vs. schizophrenia." S.B. was discharged from that facility in February 2008.

¶ 6 In April 2008, S.B. was hospitalized again at Highland Park with suicidal ideations. Thereafter, S.B. was transferred to Chicago Lake Shore hospital, where she remained until May 2008. Her diagnosis upon discharge was bipolar disorder, and the discharge summary noted that she "has a history of auditory and visual hallucinations." A psychological evaluation of S.B. performed in May 2008 indicated:

"overall cognitive ability *** cannot be easily summarized because her verbal reasoning abilities are much better developed than her non-verbal reasoning abilities. *** [S.B.'s] relative weakness in her nonverbal communication and relative weakness in her processing speed are likely impacting her interpersonal relationships and her psychological functioning. She likely has difficulty communicating nonverbally with others, by not picking up on nonverbal cues, or by missing nuances or subtleties that occur in conversations and a variety of nonverbal cues. *** This is likely to be frustrating for her and infringe on her ability to develop social skills. This likely contributes to her difficulty in developing age-appropriate social relationships."

The psychological evaluation further noted:

> "[S.B.] has had periods of marked emotional, cognitive, and psychological disruption. These disruptions have led to behavioral and emotional outbursts that have been intense, dramatic, and destructive in nature. *** Testing suggests that [S.B.] has minimal understanding of who she is."

The psychological evaluation further stated that S.B. has "reality testing concerns." The evaluation noted that S.B.'s symptoms, among them "[p]retending that [she] is someone else," "[g]oing in [her] mind, trying not to think," "[f]eeling like things aren't real," and "[t]rying not to have any feelings," suggested that S.B. was escaping situations by dissociation in a combination of fantasy and overt dissociation. The evaluation noted that "dissociation of this magnitude" is generally a method of adapting to a traumatic event, although it becomes "maladaptive to everyday situations." The evaluation noted that S.B.'s symptoms were consistent with major depression disorder and that she had a high level of anger.

¶ 7    In September 2008, S.B. was admitted to Streamwood Behavioral Health Systems, where she remained until October 2008. The discharge summary reflected that her discharge diagnosis was bipolar disorder, mixed with psychotic features. The discharge summary noted that "[t]he patient was very anxious, depressed, and feeling suicidal and wanting to cut herself." The discharge summary noted that S.B. was "hearing things, seeing things," and that the voices were telling her to hurt herself. The discharge summary further noted that S.B. was saying goodbye to her friends, was planning to kill herself, and had attempted to kill herself by taking an extra dose of lithium.

¶ 8    In January 2009, S.B. was again admitted to Streamwood. An annual psychiatric evaluation performed in November 2009 noted:

> "Over the past year, [S.B.'s] progress has been falling in different areas. In her emotional and psychological area, [S.B.] has displayed an ability to identify her feelings as well as triggers of her emotions 75% of the time. Once [S.B.] has identified her emotions and triggers, she often loses control of her ability to manage her emotions appropriately which leads to a high level of anxiety. When [S.B.] is capable of managing her emotions, she will spend time in her room reading or identify a support staff whom she wishes to address her concerns with. [S.B.] has been more acceptable recently to receiving feedback from her peers and staff, as well as she has displayed an ability to offer support to her peers."

The evaluation further noted that, with respect to S.B.'s daily and social functioning, she displayed an ability to avoid negative behavior, yet she was often triggered by the impulsive acts of others. S.B. was consistent in her school assignments and made "slight" progress toward completing her assignments. The evaluation further noted that S.B. reported continuing "auditory and visual hallucinations of a [14-year-old] girl with [a] baby and reports she sees them all the time."

¶ 9    On December 30, 2009, plaintiff received a letter notifying her that the Illinois Mental Health Collaborative for Access and Choice determined that S.B. did not meet the requirements for an individual care grant. The letter stated in relevant part:

-4-

"After careful review and consideration[,] it was determined that the documentation did not support [S.B.'s] eligibility for the [grant] as defined by [statute.]

Specifically, the review found that clinical documentation did not support that [S.B.] has severely impaired reality testing as required by [statute]."

Plaintiff appealed the decision to the Department, claiming that S.B. had a severe mental illness "as evident by her impaired reality," and that her disorder substantially impaired her thoughts, perception of reality, emotional process, judgment, behavior, and ability to cope with ordinary life demands. On March 15, 2010, the Department rejected plaintiff's appeal. The Department issued plaintiff a letter stating in relevant part:

"On March 8, 2010, the Secretary's Level Individual Care Grant Hearing psychiatrist reviewed the initial eligibility decision relating to [S.B.]. *** The psychiatrist determined that [S.B.] does not meet the criteria [to receive an individual care grant] as defined in the eligibility criteria. Therefore, the psychiatrist upheld the initial eligibility decision.

[The psychiatrist's] recommendation was sent to the Secretary ***. On March 8, 2010, the Secretary reviewed the psychiatrist's recommendation and concurred on the grounds that [S.B.] does not meet the clinical eligibility criteria."

The letter advised plaintiff that she could appeal pursuant to the provisions of the Review Law.

¶ 10 On April 23, 2010, plaintiff filed her complaint in the trial court, seeking administrative review. Plaintiff requested that the Department's decision be reversed because it was against the manifest weight of the evidence. On August 2, 2010, plaintiff filed a motion for alternative relief, requesting a remand to the Department for reconsideration in light of additional evidence. The motion alleged that new evidence from November 23, 2009, to the date of that motion demonstrated that S.B.'s conditions had not improved and that she was exhibiting increasingly self-harming behaviors.

¶ 11 On August 17, 2010, the trial court entered an order affirming the Department's decision. The trial court's order provided that "[w]ithout question, [S.B.] has a variety of psychological and emotional issues." The order further provided that the Department received and reviewed a full application for the grant, including recommendations from mental health professionals, and that credible evidence was presented to enable the Department to determine that S.B. did not qualify for the grant. Therefore, the trial court concluded that the Department's decision was not against the manifest weight of the evidence.

¶ 12 On September 16, 2010, plaintiff filed a motion to reconsider, arguing that the trial court erred because the Department's findings were insufficient, the Department failed to articulate a standard in rejecting the individual care grant application, and thus the trial court was unable to review the Department's decision. Plaintiff further argued that, since the trial court's ruling, new evidence material to the grant application had become available. Plaintiff submitted affidavits from herself and her attorney regarding S.B.'s ongoing condition and hospitalization. The trial court denied the motion to reconsider, and plaintiff filed a timely notice of appeal.

¶ 13                                    II. Discussion

¶ 14          Plaintiff contends on appeal that the Department's denial of her individual care grant
       application violated the Procedure Act because the Department failed to make specific
       factual findings. According to plaintiff, without specific findings of fact, the Department's
       decision was not sufficient for judicial review. The Department counters that its decision
       complied with the Procedure Act because its findings were sufficient to indicate the basis for
       its determination and permit intelligent review. According to the Department, its denial of
       plaintiff's application "specifically found that the documentation did not show that [S.B.] had
       severely impaired reality testing."

¶ 15          Section 7.1 of the Mental Health and Developmental Disabilities Administrative Act (the
       Mental Health Administrative Act) provides:

              "To assist families to place children with mental illness, for whom no appropriate care
              is available in Department facilities, in licensed private facilities, the Department shall
              supplement the amount a family is able to pay, as determined by the Department and the
              amount available from other sources, provided the Department's share shall not exceed
              a uniform maximum rate to be determined from time to time by the Department." 20
              ILCS 1705/7.1 (West 2010).

       Pursuant to this statute, the Department enacted a provision that children were eligible to
       receive individual care grants for residential placement due to their mental illness, including
       in-home and community services in lieu of residential placement. 59 Ill. Adm. Code 135.5
       (2012). To be eligible for such a grant, among other requirements, the child must have a
       severe mental illness, which is defined as:

              "[A] mental or emotional disorder which substantially impairs thought, perception of
              reality, emotional process, judgment, behavior, or ability to cope with the ordinary
              demands of several life domains. Symptoms must include severely impaired reality
              testing and may include hallucinations, delusions, avoidance or withdrawal from human
              contact, marked affective instability, apathy, bizarre behavior, deficient or unusual forms
              of communication, agitation and/or danger to self or others. The course of the illness
              should indicate that the symptoms do not represent an acute episode from which rapid
              and substantial remission is likely." 59 Ill. Adm. Code 135.20 (2012).

       Section 135.50 of title 59 of the Administrative Code further provides that the person
       reviewing an individual care grant application make a determination in writing, specify the
       reasons for the eligibility determination, and address each of the criteria provided in section
       135.20. See 59 Ill. Adm. Code 135.50 (2012). Finally, a decision by the Department
       constitutes a final administrative decision, which is reviewable pursuant to the Review Law.
       59 Ill. Adm. Code 135.70 (2012).

¶ 16          The Review Law provides a mechanism for judicial review of a final decision by an
       administrative agency subject to the provision. 735 ILCS 5/3-102 (West 2010). When
       reviewing a final decision from an administrative agency, this court considers the agency's
       decision, not the decision rendered by the trial court. *Department of Human Services v.
       Porter*, 396 Ill. App. 3d 701, 718 (2009). Our standard of review depends on whether the
       issue presents a question of fact, a question of law, or a mixed question of fact and law. *Id.*

When a court reviews an agency's factual findings, it will not reweigh the evidence or substitute its judgment for that of the agency; therefore, we will only ascertain whether the agency's decision was against the manifest weight of the evidence. *Exelon Corp. v. Department of Revenue*, 234 Ill. 2d 266, 272 (2009). Conversely, an agency's conclusion with respect to a question of law is reviewed *de novo*. *Id.* at 273. However, when the issue presents a mixed question of fact and law–*i.e.*, whether the rule of law as applied to the established facts is violated–we review the agency's decision for clear error. *Id.* "An administrative decision is clearly erroneous when the reviewing court is left with the definite and firm conviction that a mistake has been committed." *Id.* (citing *American Federation of State, County & Municipal Employees, Council 31 v. Illinois State Labor Relations Board, State Panel*, 216 Ill. 2d 569, 577-58 (2005)).

¶ 17    In addition, when, as here, an agency is subject to the Procedure Act, a final decision by the agency:

"shall include findings of fact and conclusions of law, separately stated. Findings of fact, if set forth in statutory language, shall be accompanied by a concise and explicit statement of the underlying facts supporting the findings." 5 ILCS 100/10-50(a) (West 2010).

Therefore, while an agency is not required to make a finding on each evidentiary fact or claim, its findings must be specific enough to permit an intelligent review of its decision. *Violette v. Department of Healthcare & Family Services*, 388 Ill. App. 3d 1108, 1112 (2009).

¶ 18    In *Violette*, the plaintiff applied for disability benefits under a program that was designed to assist people with disabilities who sought to work or increase their earnings without fear of losing their medical assistance benefits, but he was denied benefits after an administrative agency concluded that he was not disabled. *Id.* at 1109-10. A hearing and the documentation submitted in support of the plaintiff's application revealed that he suffered from a number of medical conditions, including aortic stenosis, a heart condition that required the plaintiff to take medications, get a pacemaker, and undergo other medical procedures. *Id.* at 1110. The plaintiff also suffered from hepatitis C, a chronic and incurable condition. *Id.* In addition, the plaintiff suffered an injury to his left leg resulting from a wall falling on him while he was at work. The wound required hospitalization, but eventually healed. *Id.* After the hearing, and in initially denying the plaintiff's request for disability benefits, the hearing officer did not make any findings of fact or reference the plaintiff's testimony, but instead made factual findings that consisted entirely of the determinations by the client assessment unit, a part of the agency that had previously considered the plaintiff's application. *Id.* The agency's final decision adopted the hearing officer's factual findings and, after citing the statutory requirements necessary to be eligible for benefits, the agency's final order provided:

" 'The record of this hearing shows that the [plaintiff] has a primary diagnosis of a left leg hematoma wound and a secondary diagnosis of arthritis in one knee and hepatitis. The objective medical evidence is that the [plaintiff's] impairments may cause some limitation in the [plaintiff's] ability to perform basic work. All of the [plaintiff's] impairments are controlled/treatable with medicines.

The medical evidence is that the [plaintiff's] impairment(s) do not meet the criteria

as defined by the Social Security guidelines. Therefore, the [plaintiff] has not established that he is disabled.

IT IS DIRECTED THAT:

The decision to deny the [plaintiff's] medical application *** be affirmed.' " *Id.* at 1111-12.

The plaintiff filed a complaint for administrative review, and the trial court affirmed the agency's decision. *Id.* at 1108.

¶ 19 On appeal, the Appellate Court, Fifth District, reversed the trial court and remanded the case to the agency for further proceedings. *Id.* In reaching its determination, the reviewing court noted that an agency must articulate grounds for its final administrative decision so a reviewing court can understand how the decision was reached and render intelligent review. *Id.* at 1113. The reviewing court concluded that it was impossible to determine how the agency concluded that the plaintiff's primary diagnosis was the leg wound that healed, rather than the plaintiff's heart condition or his hepatitis C. *Id.* The reviewing court also determined that, as a result of the agency's inadequate findings, it was unable to determine whether the agency applied the correct statutory standard in denying the plaintiff's application. *Id.* at 1112-13. In determining that the agency's findings were inadequate for judicial review, the court in *Violette* noted:

"The citizens of our state are entitled to more from our administrative agencies. Whether or not the [plaintiff] qualifies for benefits under the [p]rogram, the decision is of importance to him and he is entitled to a full and complete review of his application by the [agency]. He is also entitled to an explanation of the [agency's] decision that is at least sufficient to allow a review of that decision on appeal to this court. Common sense demands this, as do our statutes and, now, this court." *Id.* at 1113.

¶ 20 The *Violette* court's rationale and holding are persuasive here, and we conclude that the Department's findings were insufficient for judicial review. The documentation that plaintiff submitted with her application clearly demonstrated that S.B. was hospitalized multiple times as a result of her mental health issues. Those issues included hallucinations and suicidal ideations, an inability to regulate her mood, and aggressive behavior. A psychological evaluation conducted in May 2008 concluded that S.B. had reality testing concerns and a minimal understanding of who she was. The discharge summary from S.B.'s September 2008 hospitalization noted that S.B. was hearing and seeing "things," and a psychological evaluation performed in November 2009 noted that S.B. continued to report auditory and visual hallucinations of a 14-year-old girl with a baby. Nonetheless, the December 30, 2009, letter initially denying plaintiff's grant application did not refer to or make any findings with respect to S.B.'s mental health symptoms. Specifically, the letter did not reference S.B.'s reality testing concerns noted in her May 2008 psychological evaluation or put forth a basic explanation for why those reality testing concerns were insufficient to constitute the "severely impaired reality testing" that would make her eligible for the grant. Instead, the letter merely stated that, "[a]fter careful review and consideration," it was determined that the documentation did not support that S.B. had severely impaired reality testing.

¶ 21 Similarly, the Department's March 15, 2010, letter, which represented its final

administrative decision, did not reference or make any factual findings regarding S.B.'s symptoms or diagnoses. The Department also failed to offer any explanation for why those symptoms did not meet the eligibility requirements for a grant. Notably, the Department failed to reference S.B.'s reality testing concerns or to explain why those concerns did not constitute severely impaired reality testing. Instead, like the December 30, 2009, letter by the Illinois Mental Health Collaborative for Access and Choice, the letter merely explained that a psychiatrist reviewed S.B.'s clinical records and determined that S.B. did not meet the criteria necessary for a grant, and that the secretary of the Department reviewed the psychiatrist's recommendation and agreed with it. Thus, as in *Violette*, we are left with no way of determining what, if any, factual findings the Department made with respect to S.B.'s mental health symptoms or diagnoses and why those symptoms or diagnoses did not meet the requirements provided in section 135.50 of title 59 of the Administrative Code. Therefore, the Department's findings were not specific enough to permit the trial court any meaningful review, and the trial court should have remanded the matter to the Department for further consideration of the evidence in support of plaintiff's application. See *Violette*, 388 Ill. App. 3d at 1112.

¶ 22　　In reaching our determination, we share the concerns expressed by our colleagues in the Fifth District. The citizens of our state are entitled to more from our administrative agencies than cursory denial letters. Whether S.B. is eligible for an individual care grant is of great importance to plaintiff, and she is entitled to a decision by the Department that is specific enough to permit intelligent and thoughtful judicial review. Moreover, the Department's summary denial of plaintiff's grant application, without so much as a reference to S.B.'s symptoms or a basic explanation for why those symptoms were insufficient to constitute "severely impaired reality testing," cannot leave plaintiff with any confidence that her application was carefully and thoroughly considered. As our colleagues noted, common sense demands as much, as do our statutes and, now, this court. See *id.* at 1113. Finally, our resolution of this issue obviates any need to address plaintiff's remaining arguments. See *Siegel v. Lake County Officers Electoral Board*, 385 Ill. App. 3d 452, 457 (2008).

¶ 23　　　　　　　　　　　　　　　III. Conclusion

¶ 24　　For the foregoing reasons, the order of the circuit court of Lake County is reversed, the final decision by the Department of Human Services is vacated, and this cause is remanded to the Department for further review, evaluation, findings, and decision consistent with this opinion.

¶ 25　　Judgment reversed; final administrative decision vacated; cause remanded to Department of Human Services.